936 P.2d 1091 (1997)
STATE of Utah, IN the INTEREST OF A.B., a person under eighteen years of age.
A.B., Appellant,
v.
STATE of Utah, Appellee.
STATE of Utah, IN the INTEREST OF R.M., a person under eighteen years of age.
R.M., Appellant,
v.
STATE of Utah, Appellee.
Nos. 960205-CA, 960138-CA.
Court of Appeals of Utah.
April 3, 1997.
*1092 Linda M. Jones and Mark R. Moffat, Salt Lake City, for Appellant A.B.
Robert K. Heineman, Deborah Kreeck Mendez, Linda M. Jones, and Mark R. Moffat, Salt Lake City, for Appellant R.M.
*1093 Jan Graham, J. Kevin Murphy, and Laura B. Dupaix, Salt Lake City, for Appellee.
Before DAVIS, P.J., and BILLINGS and GREENWOOD, JJ.

OPINION
GREENWOOD, Judge:
This case is a consolidation of appeals of A.B. and R.M., both juveniles, from judgments of the Third District Juvenile Court binding each over to district court to be tried as adults. The juveniles challenge the constitutionality of the serious youth offender statute, Utah Code Ann. § 78-3a-602 (1996). The serious youth offender statute creates a narrow, judicially-mediated exception which permits juveniles to rebut the presumption that, in certain prescribed circumstances, juveniles will be bound over for criminal prosecution in district court. Once probable cause is found, the juvenile court retains jurisdiction only if the accused serious youth offender proves, by clear and convincing evidence, that the following three juvenile court "retention factors" exist:
(i) the minor has not been previously adjudicated delinquent for an offense involving the use of a dangerous weapon which would be a felony if committed by an adult;
(ii) that if the offense was committed with one or more other persons, the minor appears to have a lesser degree of culpability than the codefendants; and
(iii) that the minor's role in the offense was not committed in a violent, aggressive, or premeditated manner.
Utah Code Ann. § 78-3a-602(3)(b) (1996). In both cases, the juvenile courts denied the juveniles' motions that the serious youth offender statute is unconstitutional on the grounds that it violates the juveniles' rights under the Fifth and Fourteenth Amendments to the United States Constitution and article I, sections 7, 12, and 24 of the Utah Constitution. After a preliminary hearing, the juvenile courts ordered the juveniles bound over and held to answer their respective charges in district court. We affirm.

BACKGROUND
The following facts are summarized from the juveniles' preliminary hearings:

R.M.
At the time of his alleged offense, R.M. was seventeen years of age. He was charged with discharge of a firearm from a vehicle in connection with a drive-by shooting in which two bullets were fired into an occupied bedroom, and a third into the homeowners' vehicle. R.M. allegedly fired the gunshots because members of a rival gang had been "talking shit" about him and his friends.
R.M. had no prior adjudications for dangerous weapons felonies. He was unable, however, to satisfy either of the other two retention factors  relatively low culpability compared to his coperpetrator, or non-violent, non-aggressive, non-premeditated action. The juvenile court accordingly transferred jurisdiction to the district court.

A.B.
A.B., who was sixteen years of age at the time, was accused of aggravated robbery, with a dangerous weapon enhancement. Allegedly A.B., wearing a mask and wielding a gun, entered a Salt Lake City bank with an accomplice. A.B. handcuffed several tellers and customers, and stole money and a customer's car keys. The police apprehended A.B. and the accomplice as they fled the bank. A.B. confessed to his involvement in the robbery.
After the juvenile court found probable cause to believe that A.B. committed the armed robbery, it considered the juvenile court retention factors. The juvenile court concluded that although A.B. had no prior dangerous weapon felony adjudications, he failed to prove the other two retention factors by clear and convincing evidence. The juvenile court found that even though A.B. was somewhat less culpable than his coperpetrator, A.B. had, nonetheless, actively participated in the aggravated robbery. The court further determined that A.B's actions were "very aggressive," violent, and most significantly, highly premeditated (A.B. had purchased the handcuffs in anticipation of the *1094 robbery). As such, the juvenile court determined that A.B. failed to rebut the district court bindover presumption and waived jurisdiction over A.B.

ISSUES ON APPEAL
This case raises the following issues: (1) Are the juvenile court retention factors rationally related to the legislative purpose of the serious youth offender statute, so as not to violate article I, section 24 of the Utah Constitution or the Equal Protection Clause of the United States Constitution; (2) Does the serious youth offender statute violate the juveniles' federal and state constitutional right against self-incrimination, in requiring the juveniles to prove, by clear and convincing evidence, their mental state with respect to the offense charged; and (3) Does Utah's serious youth offender statute, which requires the juvenile court to transfer its original jurisdiction over designated juveniles to the adult criminal court system, satisfy federal and state constitutional due process requirements?

STANDARD OF REVIEW
The issue of whether a statute is constitutional is a question of law, with no deference given to the trial court. See State v. Mohi, 901 P.2d 991, 995 (Utah 1995). A statute, however, carries a strong presumption of constitutionality, with doubts resolved in favor of its constitutionality. See id.; State v. Bell, 785 P.2d 390, 397-98 (Utah 1989).

ANALYSIS
To adequately address the juveniles' challenges to the serious youth offender statute and understand Utah's scheme for handling juvenile offenders, it is appropriate to examine the context of this statute in relation to the other two interrelated juvenile offender statutes, even though they are not at issue in this case. See Utah Code Ann. §§ 78-3a-601, -602, -603 (1996).

Certification Statute.
Section 78-3a-603 of the Utah Code, the certification statute, provides that juveniles fourteen and fifteen years of age charged with felonies may be "certified" for trial in the district court upon a request by the prosecution and after a special hearing. The prosecution bears the burden of proving, in addition to probable cause, that it is "contrary to the best interests of the minor or of the public for the juvenile court to retain jurisdiction." Utah Code Ann. § 78-3a-603(2) (1996). In determining whether the prosecution has met its burden of proof, the juvenile court must consider a number of factors, but may make its decision on finding one or more of the factors. See id. § 78-3a-603(3). The factors are similar to those constitutionally approved, but not required, by the United States Supreme Court in Kent v. United States, 383 U.S. 541, 566-67, 86 S.Ct. 1045, 1060, 16 L.Ed.2d 84 (1966). Among the factors considered are the juvenile's record, previous history, and "the likelihood of rehabilitation of the minor by use of facilities available to the juvenile court." Utah Code Ann. § 78-3a-603(3)(f), (g) (1996).

Direct File.
Section 78-3a-601 of the Utah Code, the direct file provision, grants the district court "exclusive original jurisdiction" over juveniles sixteen years of age or older if the prosecutor charges murder or aggravated murder, or charges any felony and such juvenile has a prior commitment to a "secure" facility. See Utah Code Ann. § 78-3a-601 (1996). Notably, the amenability of the juvenile to rehabilitation is not an issue under these circumstances; the prosecution must file in district court. See id.

Serious Youth Offender Statute.
Section 78-3a-602 of the Utah Code, the serious youth offender statute, addresses juveniles sixteen and seventeen years of age charged with nine enumerated violent felonies, plus a tenth category of juveniles accused of committing dangerous weapon offenses that would be felonies if committed by adults, and who have been adjudicated or convicted for such offenses by a juvenile *1095 court on a prior occasion.[1]See Utah Code Ann. § 78-3a-602(1) (1996). Under these circumstances, the prosecution must file a criminal information in the juvenile court. See id. The juvenile court then holds a preliminary hearing in which the State must establish that an enumerated offense has been committed and that there is probable cause to believe the juvenile committed it.[2] If the juvenile court finds probable cause, the juvenile is presumptively bound over for trial in the district court, unless the juvenile can prove all three of the retention factors by clear and convincing evidence. See id. § 78-3a-602(3)(b). The three retention factors do not consider the juvenile's amenability to rehabilitation or prior record; rather, the factors address the circumstances surrounding the offense charged. See id. § 78-3a-602(3)(b). There is a strong presumption of district court jurisdiction. See id.
We now turn to the juveniles' facial challenges to the serious youth offender statute.

A. Uniform Operation of Laws

The juveniles argue that the serious youth offender statute violates article I, section 24 of the Utah Constitution, which states, "All laws of a general nature shall have uniform operation." Utah Const. art. I, § 24.[3] Article I, section 24 protects against two types of discrimination:
First, a law must apply equally to all persons within a class. Second, the statutory classifications and the different treatment given the classes must be based on differences that have a reasonable tendency to further the objectives of the statute.
Malan v. Lewis, 693 P.2d 661, 670 (Utah 1984) (holding Utah guest statute unconstitutional because classification does not have reasonable tendency to further statute's objectives) (citations omitted); accord State v. Mohi, 901 P.2d 991, 997 (Utah 1995).
The juveniles argue that the serious youth offender statute establishes two classes of juvenile offenders: (1) juveniles sixteen years of age and older charged with an enumerated offense over whom the juvenile court retains jurisdiction because the juveniles were able to prove by clear and convincing evidence the three retention factors; and (2) juveniles sixteen years of age and older charged with an enumerated offense where the juvenile court transfers its original jurisdiction to the district court because the juveniles were unable *1096 to meet their burden of proof. The juveniles contend that those over whom the juvenile court retains jurisdiction and those over whom the district court exercises jurisdiction are treated disparately. See Mohi, 901 P.2d at 998. They assert that the serious youth offender statute's legislative history indicates that the Legislature intended to apply adult sanctions only to juvenile offenders unamenable to rehabilitation in the juvenile system. The juveniles refer to the statements of Senator Hillyard, the statute's sponsor, that the serious youth offender statute allowed the juvenile court to consider "in a preliminary hearing type situation and be able to make a decision that, no, there are programs for this youth that would still make him amenable to what can be done in juvenile court and he would be retained." Tape of Utah Senate Floor Debates, 51st Legislature, General Session (February 9, 1995). Further, the juveniles cite to the House debate which included the following statements: "The kid needs a one-stop good shot at the juvenile system and the resources that are there.... We're not throwing kids away after this [transferring jurisdiction to district court]. The kids have had a one-shot at the juvenile system." Tape of Utah House Floor Debates, 51st Legislature, General Session (March 1, 1995) (statement of Rep. Barth). The Legislature intended to separate salvageable youths from those who are a "lost cause and will wind up in the adult criminal justice system in any event," assert the juveniles. They also argue that the Legislature's intent  to give juveniles one shot at the juvenile system  is consistent with the juvenile court system's main objectives. The serious youth offender statute's discriminatory scheme, the juveniles argue, does not serve the purpose of the serious youth offender statute, and thus violates the uniform operation of laws.
The State counters the juveniles' arguments by asserting the statute does not create disparate classes of juveniles. Rather than broadly defining the juvenile classes as those over whom the juvenile or the district court exercises jurisdiction, the State focuses on the class of serious youth offenders transferred to the district court. The State argues that because the juvenile court retention factors are so difficult to prove, only a small minority of serious youth offenders, upon a powerful showing of special circumstances, will be retained in the juvenile system, and the majority will be treated in the district court. This approach thereby removes the Mohi unconstitutionality problem by eliminating the possibility of "unreasonably different" treatment of like-situated offenders because all serious youth offenders transferred to district court will be treated similarly, and those juveniles who prove the three retention factors are categorically different from those transferred to district court.[4] Even if the statute does create disparate classes, the State argues, it is reasonably related to legitimate legislative purposes.
We apply the reasonable-relation test in deciding the constitutionality of the serious youth offender statute under the Utah constitution, because "a juvenile's interest in his or her trial forum touch[es] and concern[s] a `critical' interest." Mohi, 901 P.2d at 995 (quoting State In re Clatterbuck, 700 P.2d 1076, 1079 (Utah 1985)). Accordingly, "[i]n scrutinizing a legislative measure under article I, § 24, we must determine whether the classification is reasonable, whether the objectives of the legislative action are legitimate, and whether there is a reasonable relationship between the classification and the legislative purposes." Blue Cross, 779 P.2d at 637. "The burden of demonstrating unconstitutionality, however, remains a heavy one." Mohi, 901 P.2d at 996; see also Bell, 785 P.2d at 397. As such, this court will uphold the serious youth offender statute *1097 unless the State's interest in public safety and the juveniles' needs is not reasonably related to the statutory provisions in question.
We find merit in the State's argument, but decline to become mired in semantics. Even if there is disparate treatment between the classes of juveniles, we hold that the Legislature's reasonable objectives warrant the disparity. We find the juveniles' assertion that the primary purpose of the serious youth offender statute is rehabilitation, flawed, for three reasons: (1) the juveniles improperly utilize legislative history in failing to accord proper importance to the statute's plain language; (2) the Utah Legislature's overall policy toward youthful offenders has changed; and (3) the serious youth offender statute reasonably serves a legitimate legislative purpose.
First, "[w]here statutory language is plain and unambiguous, this Court will not look beyond the same to divine legislative intent. Rather, we are guided by the rule that a statute should generally be construed according to its plain language." Brinkerhoff v. Forsyth, 779 P.2d 685, 686 (Utah 1989) (citation omitted); accord State v. Hunt, 906 P.2d 311, 312 (Utah 1995) ("`The best evidence of the true intent and purpose of the Legislature in enacting the Act is the plain language of the Act.'" (citation omitted)); Salt Lake City v. Ohms, 881 P.2d 844, 850 n. 14 (Utah 1994) (explaining statutory language is first source of statutory interpretation: "The reason for such a rule is clear. It prevents judges from `finding' an ambiguity ... in an attempt to justify an interpretation they prefer."); see also 2A Norman J. Singer, Sutherland Statutory Construction § 45.08, at 35 (5th ed. 1992) (noting to interpret statutes by reference to legislative debates actually erodes due process notice function of statute). Furthermore, "[u]nless the statute on its face is unclear or ambiguous, we find no need to delve into the uncertain facts of legislative history." Visitor Info. Ctr. Auth. v. Customer Ser. Div. Utah State Tax Comm'n, 930 P.2d 1196, 1198 (Utah 1997); accord Salt Lake Child & Family Therapy Clinic, Inc. v. Frederick, 890 P.2d 1017, 1020 (Utah 1995) ("`When language is clear and unambiguous, it must be held to mean what it expresses, and no room is left for construction.'" (citations omitted)); see also State v. Valdez, 933 P.2d 400, 401 (Utah Ct.App.1997) (stating "only if the plain language of the statute is unclear do we `resort to legislative history and purpose for guidance.'" (citation omitted)). Additionally, we read a statute to harmonize it with related statutes  in this case, Utah's two other statutes for prosecuting youthful offenders. See State v. Bishop, 753 P.2d 439, 468 (Utah 1988) (stating "statutes must be interpreted harmoniously with other statutes relevant to the subject matter"); State v. Souza, 846 P.2d 1313, 1317 (Utah.Ct.App.1993) (stating "[i]f there is doubt or uncertainty as to the meaning or application of the provisions of an act, it is appropriate to analyze the act in its entirety, in light of its objective, and to harmonize its provisions in accordance with its intent and purpose") (citations & quotation marks omitted).
When we examine the constitutionality of a statute, we merely inquire whether the statute achieves the result intended by the Legislature in a constitutional manner. In State v. Copeland, 765 P.2d 1266 (Utah 1988), the supreme court determined that the statutorily enumerated means to be employed to determine whether a mentally ill offender should be committed to a state hospital, as opposed to being imprisoned, were "unintelligible in the context of the statute's purpose." Id. at 1272. Accordingly, because the statute was internally inconsistent and illogical, the Copeland court held the statute was arbitrary and capricious as applied and thus, unconstitutional. See id. The serious youth offender statute, however, is unlike the statute analyzed in Copeland. The plain language of the serious youth offender statute demonstrates the Legislature intended to remove rehabilitative prospects from the juvenile court's decision of whether to retain jurisdiction over a serious youth offender or bind over such offender to the district court. The means used to achieve this legislative purpose are neither inconsistent nor illogical. The statute unambiguously excludes consideration of rehabilitation. As a preliminary matter, the statute does not mention "rehabilitation." See Ohms, 881 P.2d at 855-57 *1098 (Howe, J., Russon J., & Stewart A.C.J., concurring) (noting statutory rule of construction: Legislature does not intend to do something not expressed in statute).
Further, the serious youth offender statute contrasts with the certification statute, passed during the same legislative session. Unlike the serious youth offender statute, the certification statute does include consideration of "the likelihood of rehabilitation of the minor by the use of facilities available to the juvenile court," in the juvenile court's certification decision. Utah Code Ann. § 78-3a-603(3)(g) (1996) (emphasis added). As such, the Utah Legislature clearly knew how to make rehabilitation a consideration in determining whether to waive jurisdiction over a youth offender; had the Legislature intended it to be considered in the serious youth offender statute, the Legislature would have so stated. Accordingly, reading the serious youth offender and certification statutes together, it is plain that under the serious youth offender statute, the Legislature did not intend that the juvenile court consider a juvenile's rehabilitative prospects. The Legislature made a policy decision that those juveniles sixteen and seventeen years of age charged under the serious youth offender statute should presumptively be tried as adults, due to their age and the serious nature of the offenses charged. We cannot rely on the isolated remarks of Senator Hillyard or Representative Barth to trump the plain language and context of the statute.
Moreover, the Legislature enacted the serious youth offender statute in response to the Utah Supreme Court's holding in Mohi. The Mohi court held that the direct-file provision of the Juvenile Courts Act violated the Utah Constitution's uniform operation of laws provision because it gave "prosecutors undirected discretion to choose where to file charges against certain juvenile offenders." Mohi, 901 P.2d at 1004. The Legislature was clearly cognizant of the constitutional infirmities of the direct-file provision when it enacted the serious youth offender statute, and adopting the juveniles' interpretation of this statute would likely result in it suffering from the same infirmities as its predecessor, a result the Legislature could not have intended. See id. at 995.
Additionally, the Legislature's decision not to consider rehabilitation is apparent in the three juvenile court retention factors, none of which address the juvenile's amenability to rehabilitation. Instead, the retention factors address whether the juvenile has been previously adjudicated delinquent for a dangerous weapon offense, and the nature and extent of the juvenile's involvement in the offense charged.
In sum, the Legislature did not intend the statute, under its terms and as read with related law, to permit the juvenile court to predict a juvenile's rehabilitative prospects. This was a legislative policy decision that this court will not strike, absent unconstitutionality. See Zamora v. Draper, 635 P.2d 78, 80 (Utah 1981) (stating "the prerogative of the legislature as the creators of the law is to be respected."). Accordingly, the intent of the Legislature is not as urged by the juveniles, but as expressed by the statute.
Second, the juveniles' interpretation of the serious youth offender statute's purpose is flawed because the Legislature has changed its policy toward juvenile offenders. The State cites the recently rewritten juvenile court purposes statement, which places emphasis on public safety, personal accountability, and sanctions for improper behavior first, and then addresses rehabilitation, "where appropriate." Utah Code Ann. § 78-3a-102(5) (1996). Additionally, when Utah's interrelated statutory scheme for prosecuting youthful offenders the direct-file provision, the serious youth offender statute, and the certification statute  is considered, it is clear that the Legislature has changed its policy toward juveniles to address the increase in "violent" juvenile crime. See Mohi, 901 P.2d at 1007 (Zimmerman, C.J., concurring) (noting "the problems of violent youth crime .... are real.").
Third, the serious youth offender statute, which is designed to transfer the majority of serious youth offenders to the criminal system, serves a legitimate purpose. The serious youth offender statute protects (1) the public from juveniles who are just as dangerous *1099 as adult criminals, and (2) younger, less serious juvenile offenders, who remain in the juvenile system, from the potent effects of peer interaction.[5]Cf. Bishop v. State, 265 Ga. 821, 462 S.E.2d 716, 718 (1995) (approving similar purposes of analogous Georgia statute). Further, the serious youth offender statute remedies the constitutional defects of its predecessor, addressed in Mohi, by creating a strong presumption that cases involving inherently violent and aggressive offenses by juveniles sixteen years of age and older will be transferred to the district court.
We conclude that the serious youth offender statute, creating a presumption of district court jurisdiction over juveniles sixteen and seventeen years of age charged with an enumerated offense, is constitutional under article I, section 24 of the Utah Constitution. Because the serious youth offender statute withstands scrutiny under article I, section 24, we determine it is not necessary to address the juveniles' argument that it violates the federal equal protection clause. See Blue Cross, 779 P.2d at 637, 645; Mountain Fuel Supply Co. v. Salt Lake City Corp., 752 P.2d 884, 890 (Utah 1988).

B. Right Against Self-Incrimination

The juveniles assert that section 78-3a-602(3)(b) violates both the federal and state constitutions by compelling juveniles to testify and/or present evidence against themselves to prove the juvenile court retention factors. The right against self-incrimination may be claimed "`in any proceeding,.... [I]t protects any disclosures which the witness may reasonably apprehend could be used in a criminal prosecution or which could lead to other evidence that might be so used.'" In re Gault, 387 U.S. 1, 47-48, 87 S.Ct. 1428, 1454, 18 L.Ed.2d 527 (1967) (citation omitted) (court's emphasis). The Fifth Amendment of the United States Constitution provides in part, "No person shall ... be compelled in any criminal case to be a witness against himself." U.S. Const.amend. V. The language of the Utah Constitution's self-incrimination clause differs somewhat from its federal counterpart. See Utah Const. art. I, § 12 (providing that no person shall "be compelled to give evidence against himself"). As the Utah Supreme Court stated in State v. Herrera, 895 P.2d 359 (Utah 1995), "Utah's privilege against self-incrimination does not exceed that of the federal constitution." Id. at 371; accord American Fork City v. Crosgrove, 701 P.2d 1069, 1073 (Utah 1985) (plurality opinion) (recognizing that "the framers intended the privilege [against self-incrimination] to have the same scope that it had under similar constitutional provisions, which was the scope it had at common law."). Accordingly, our analysis under the state and federal constitutions of the juveniles' claim is the same, and we use cases decided by the United States Supreme Court and others for guidance.
The juveniles argue that the serious youth offender statute effectively forces them to choose between treatment in the juvenile system or forfeiture of their right against self-incrimination. They assert that the serious youth offender statute presents a forfeiture risk and fails to provide any safeguards pertaining to the scope of examination at the special hearing or the use of such information disclosed at later proceedings.[6]
*1100 The juveniles' argument is flawed, however, as the statute does not compel the juveniles to testify in order to support their retention claim. See Utah Code Ann. § 78-3a-602(3)(b)(iii) (1996) (requiring juvenile to prove "that the minor's role in the offense was not committed in a violent, aggressive, or premeditated manner"); cf. Sandy City v. Larson, 733 P.2d 137, 140 (Utah 1987) (holding "that a refusal to take a breathalyzer test is not an act compelled by the State and is thus not protected by the article I, section 12 privilege against self-incrimination"). The juveniles have other methods available to prove the non-violent retention factor, as demonstrated by these appeals. R.M. called his own witness; he did not testify. A.B. cross-examined the bank-robbery victims in his attempt to prove that he was less aggressive and violent than his coperpetrator. Like R.M., A.B. did not testify. While it may be difficult to prove the non-violent retention factor without the accused's testimony, the right against self-incrimination protects accused persons from compelled self-incrimination, not from hard choices. See McGautha v. California, 402 U.S. 183, 213, 91 S.Ct. 1454, 1470, 28 L.Ed.2d 711 (1971) (noting constitution does not always forbid requiring defendant to make difficult choices), vacated on other grounds sub nom., Crampton v. Ohio, 408 U.S. 941, 92 S.Ct. 2873, 33 L.Ed.2d 765 (1972). As such, the serious youth offender statute does not violate the juveniles' right against self-incrimination under either the federal or state constitutions.

C. Due Process of Law

Finally, the juveniles argue that the serious youth offender statute violates substantive due process requirements of the federal and state constitutions because the juveniles' burden of proving the three retention factors offends a fundamental right and the statute is void for vagueness. We disagree.
Article I, section 7 of the Utah Constitution provides, "No person shall be deprived of life, liberty or property without due process of law." Cf. U.S. Const. amend. V, XIV. As the Utah Supreme Court noted in Untermyer v. State Tax Commission, 102 Utah 214, 129 P.2d 881, 885 (1942), this due process clause is substantially similar to that of the Fifth and Fourteenth amendments of the federal constitution, and thus "[d]ecisions of the Supreme Court of the United States on the due process clauses of the Federal Constitution are `highly persuasive' as to the application of that clause of our state constitution." Id.
Requiring a juvenile to prove the three retention factors by clear and convincing evidence does not offend a fundamental right. The due process review standard is deferential: "[A] state procedure `does not run foul of the Fourteenth Amendment because another method may seem to our thinking to be fairer or wiser or to give a surer promise of protection to the prisoner at the bar.'" Medina v. California, 505 U.S. 437, 451, 112 S.Ct. 2572, 2580, 120 L.Ed.2d 353 (1992) (quoting Snyder v. Massachusetts, 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934)). This deference is reduced if the state procedure "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." McMillan v. Pennsylvania, 477 U.S. 79, 85, 106 S.Ct. 2411, 2416, 91 L.Ed.2d 67 (1986) (citations & quotation marks omitted).
The right to a juvenile court proceeding is not fundamental. See State v. Bell, 785 P.2d 390, 399 (Utah 1989) (stating "[a] juvenile has no right to treatment in the juvenile system or `to be specially treated as a juvenile delinquent instead of a criminal offender.'" (citation & footnote omitted)). As the Bell court observed, "`"There is no constitutional right to youthful offender status *1101 and such treatment is entirely a gratuitous creature of the legislature subject to such conditions as the legislature may impose without violating constitutional guarantees."'" Id. (citations omitted); cf. State v. Mohi, 901 P.2d 991, 1005 (Utah 1995) (explaining that if Legislature does not classify certain persons as "juvenile offender," juveniles cannot claim their juvenile status was unconstitutionally removed "[b]ecause they have no `right' to juvenile treatment"). The Legislature may at its prerogative determine that the high level of violent juvenile crime justifies the presumption of district court jurisdiction without offending due process principles. See, e.g., id. at 1007 (Zimmerman, C.J., concurring); Bell, 785 P.2d at 401; cf. Montana v. Egelhoff, ___ U.S. ___, ___-___, 116 S.Ct. 2013, 2019-21, 135 L.Ed.2d 361 (1996) (plurality opinion) (determining connection between crime and intoxication justifies Legislature's restriction of voluntary intoxication defense). We conclude the clear and convincing standard of proof does not offend a fundamental right, and thus does not violate the due process clause.
The juveniles further assert that the serious youth offender statute is unconstitutional for vagueness. Although the serious youth offender statute does not specifically define all of its terms and leaves bindover within the juvenile court's discretion, this does not render the statute unconstitutional for vagueness. See In re Salas, 520 P.2d 874, 876 (Utah 1974) (holding certification statute, not void for vagueness because it creates statutory standard within which juvenile court judge must exercise its discretion).
The juveniles argue that the "lesser degree of culpability" language in the second retention factor necessarily refers to degrees of offenses as set forth in Utah's criminal code and is thus incapable of being rationally applied. Unless so specified, the words of a statute are given their ordinary meanings and not their possible legal or technical meanings. See State v. Paul, 860 P.2d 992, 993 (Utah.Ct.App.1993); see also 2A Norman J. Singer, Sutherland Statutory Construction § 47.28 (5th ed. 1992 & Supp.1996).
If the second retention factor were given the legalistic interpretation espoused by the juveniles  that proof of retention factor two could involve proof that the juveniles committed a lesser degree of offense than their coperpetrators  this would defeat the purpose of the serious youth offender statute. The Legislature contemplated that the majority of, if not all, juveniles charged under the serious youth offender statute would be transferred to the district court. Accordingly, the "degree of culpability" language used in the second retention factor does not refer to the degree of the crime for which a juvenile is charged. Instead, the "degree of culpability" language provides a means for the juvenile to overcome the strong presumption that he or she should be tried as an adult. If the degree of culpability language meant that a juvenile satisfying the second retention factor could reduce the underlying charge, it would effectively eliminate the legislatively-created presumption of district court jurisdiction. When the juvenile court considers the retention factors, it has already determined that there is probable cause that the juvenile has committed a qualifying crime. The Legislature did not intend the juvenile court to revisit its threshold finding; instead, the Legislature intended for the court to determine whether the juvenile has overcome the presumption of district court jurisdiction.
Finally, had the Legislature intended "degree of culpability" to mean the same as "degree of offense," it could have incorporated the pertinent criminal code provision, Utah Code Ann. § 76-3-103 (1995) (classifying felonies by "degree"), into the retention factors. Cf. id. § 76-3-203.1 (incorporating "party liability" statute into "in concert" enhancement statute). Because the Legislature failed to do so, under the plain language of the statute, the "degree of offense" is not incorporated into the second retention factor.
For similar reasons, the juveniles' argument that the third retention factor is void for vagueness fails. Although the enumerated crimes are "inherently violent and aggressive," the crimes may be committed with varying levels of violence and aggression. It is foreseeable that a juvenile could commit an enumerated offense with a low level of violence *1102 and aggression, so as to defeat the presumption of district court jurisdiction over a serious youth offender. We conclude that the serious youth offender statute does not violate the juveniles' due process rights under the state or federal constitutions.

CONCLUSION
Based on the foregoing analysis, we hold the juvenile court retention factors of the serious youth offender statute are rationally related to the statute's legislative purpose, and thus, the serious youth offender statute does not violate article I, section 24 of the Utah Constitution or the Equal Protection Clause of the United States Constitution. Additionally, the statute does not offend the juveniles' federal and state constitutional right against self-incrimination in compelling them to prove the juvenile court retention factors by clear and convincing evidence. Finally, the serious youth offender statute satisfies federal and state due process requirements. Accordingly, we affirm the juvenile courts' orders transferring jurisdiction of A.B. and R.M. in their respective felony prosecutions to the Third Judicial District Court.
DAVIS, P.J., and BILLINGS, J., concur.
NOTES
[1] The serious youth offender statute provides in relevant part:

(1) Any action filed by a county attorney, district attorney, or attorney general charging a minor 16 years of age or older with a felony shall be by criminal information and filed in the juvenile court if the information charges any of the following offenses:
(a) any felony violation of:
(i) Section 76-6-103, aggravated arson;
(ii) Subsection 76-5-103 (1)(a), aggravated assault, involving intentionally causing serious bodily injury to another;
(iii) Section 76-5-302, aggravated kidnaping;
(iv) Section 76-6-203, aggravated burglary;
(v) Section 76-6-302, aggravated robbery;
(vi) Section 76-5-405, aggravated sexual assault;
(vii) Section 76-10-508, discharge of a firearm from a vehicle;
(viii) Section 76-5-202, attempted aggravated murder; or
(ix) Section 76-5-203, attempted murder; or
(b) an offense other than those listed in Subsection (1)(a) involving the use of a dangerous weapon which would be a felony if committed by an adult, and the minor has been previously adjudicated or convicted of an offense involving the use of a dangerous weapon which also would have been a felony if committed by an adult.
Utah Code Ann. § 78-3a-602(1) (1996).
[2] For the tenth qualifying category, the State must prove by a preponderance of evidence that the charged juvenile has a prior adjudication for a dangerous weapon offense. See Utah Code Ann. § 78-3a-602(3)(a) (1996).
[3] The juveniles also assert that the serious youth offender statute violates the federal equal protection clause. We must examine the juveniles' state and federal equal protection claims separately as "the federal equal protection clause and Utah's uniform operation of laws clauses contain separate and independent guarantees." Mohi, 901 P.2d at 1004 n. 22; see, e.g., Lee v. Gaufin, 867 P.2d 572, 577 (Utah 1993). However, because our analysis under the uniform operation of laws clause "is at least as vigorous as that required by the federal equal protection clause, and probably more so," we examine this issue first. Blue Cross & Blue Shield v. State, 779 P.2d 634, 637 (Utah 1989); see also Gray v. Department of Employment Sec., 681 P.2d 807, 825-26 (Utah 1984) (Durham, J., concurring & dissenting).
[4] In Mohi, the Utah Supreme Court held that the direct-file provision of the Juvenile Courts Act, Utah Code Ann. § 78-3a-25 (1993), violated the uniform operation of laws provision of the Utah Constitution. See Mohi, 901 P.2d at 1004. The court concluded that the direct-file provision, which granted "prosecutors total discretion in deciding which members of a potential class of juvenile offenders to single out for adult treatment," id. at 1002, treated individual offenders accused of the same offense differently and thus, "operate[d] disparately and nonuniformly on similarly situated juveniles," id. at 1004, in violation of article I, section 24 of the Utah Constitution.
[5] As Representative Christine Fox explained, "[t]he serious youth offender bill is the product of a year-long effort from Utah's criminal and juvenile justice professionals to create a new category of crime that will safeguard the public and hold violent and chronic juvenile offenders accountable." Tape of Utah House Floor Debates, 51st Legislative, General Session (March 1, 1995).
[6] Former Utah Code Ann. § 78-3a-44(3) (Supp. 1995), provided:

The record in the juvenile court and any evidence given in the juvenile court are not admissible as evidence against the child in any proceedings in any other court, with the exception of cases involving traffic violations, criminal proceedings under 78-3a-25 and 78-3a-25.1, or to establish the jurisdiction of the adult court under Subsection 78-3a-16(1).
Id. (emphasis added) (repealed). This subsection was repealed during the 1996 legislative session. See Juvenile Court Recodification, ch.1, § 93, 1996 Utah Laws 3, 49-51. The 1996 amendments do not specifically except evidence presented at juvenile court proceedings from use at a subsequent trial in district court. See Utah Code Ann. § 78-3a-515 (1996). The State asks this court to clarify that testimony given in an effort to prove the juvenile court retention factors may be admitted at a later trial. The juveniles, alternatively, ask that we adopt a procedural safeguard to protect juveniles from compelled self-incrimination and to preserve the confidentiality of juvenile court proceedings. This court, however, lacks jurisdiction to adopt rules of procedure or evidence. Adopting an exception or a safeguard to the serious youth offender statute is more properly the dominion of the Legislature or, alternatively, the supreme court. See Utah Const. art. VI, § 1 (power of Legislature); Utah Const. art. VIII, § 4 ("The Supreme Court shall adopt rules of procedure and evidence to be used in the courts of the state."); see also State v. Herrera, 895 P.2d 359, 370 (Utah 1995) (supreme court engrafting procedural safeguard onto insanity defense statute to protect defendant's right against self-incrimination).