**STATE of Utah, In the Interest of Z.R.S., a person under eighteen years of age.**

**Z.R.S., Appellant,**

v.

**STATE of Utah, Appellee.**

No. 970088–CA.

Court of Appeals of Utah.

Jan. 8, 1998.

Robert K. Heineman and Deborah Kreeck Mendez, Salt Lake City, for Appellant.

Jan Graham and Joanne C. Slotnik, Salt Lake City, for Appellee.

Before GREENWOOD, JACKSON and ORME, JJ.

## OPINION

PER CURIAM:

Z.R.S. (appellant) appeals the juvenile court's order binding him over to district court. We affirm.

## ISSUE

Appellant argues that in *State in re A.B.,* 936 P.2d 1091 (Utah Ct.App.), *cert. denied,* 945 P.2d 1118 (Utah 1997), this court adopted a balancing test to be applied to the third "retention factor" of Utah's Serious Youth Offender Act, Utah Code Ann. § 78–3a–602(3)(b)(iii) (1996).

## THE SERIOUS YOUTH OFFENDER ACT

The Serious Youth Offender Act provides that once probable cause is found, the juvenile court retains jurisdiction only if the juve-

nile proves by clear and convincing evidence that the following "retention factors" exist:

(i) the minor has not been previously adjudicated delinquent for an offense involving the use of a dangerous weapon which would be a felony if committed by an adult;

(ii) that if the offense was committed with one or more other persons, the minor appears to have a lesser degree of culpability than the codefendants; and

(iii) that the minor's role in the offense was not committed in a violent, aggressive, or premeditated manner.

Utah Code Ann. § 78–3a–602(3)(b) (1996).

Appellant was able to prove that he had not been previously adjudicated delinquent for an offense involving the use of a dangerous weapon (the first retention factor) and that he had a lesser degree of culpability than codefendant, I.P. (the second retention factor). However, the juvenile court concluded that appellant did not prove the third retention factor. Thus, this case turns on the application of the third factor and what test, if any, this court announced in *A.B.* in reviewing that factor.

## BACKGROUND

The following testimony was presented at the bindover hearing. A.V. (the victim), an eleven-year-old female, was home alone, when she decided to call appellant, a sixteen-year-old male. (The victim got appellant's phone number from a slip of paper in her sister's bedroom.) The victim invited appellant over and was outside when appellant and I.P. (the accomplice) arrived. Appellant asked if the victim was home (he did not know what she looked like), and the victim told him "no." Appellant and the accomplice then asked the victim if they could go into her home, and she refused to let them in. The victim noticed what appeared to be the black handle of a knife hanging out of appellant's pocket. Appellant and the accomplice then left. Scared, the victim called her mother at work and her mother told her to lock the doors. Shortly thereafter the phone rang and a male voice asked for the victim's mother. When the victim told the caller that her mother was not home, the male caller said, "We'll be down there in five minutes." Within a few minutes the victim heard banging on the front door, then banging on a side door. She did not answer, but moments later she heard a thud and then footsteps *coming up the basement stairs.* She called 911. Appellant and the accomplice then entered the room where the victim was located. Appellant went into another bedroom while the accomplice held a knife to the victim's throat, threatening to kill her if she said anything to the police. When appellant returned to the bedroom where she was located, the victim thought she saw her sister's jewelry in his pocket. The accomplice released the victim, and appellant then sat next to her on the bed and put his hand on her thigh. The victim testified that she was afraid appellant was going to do something to her. Appellant told her that everything would be okay, then he and the accomplice left. Outside the victim's home, the accomplice pulled a knife on a man who was following them. Appellant told the man "Don't mess with us, we'll shank you."

When the police found appellant, he had jewelry and a knife with a black handle in his possession. Appellant was charged, pursuant to Utah's Serious Youth Offender Act, with one count of aggravated burglary and one count of aggravated assault. Following a preliminary hearing, the juvenile court bound appellant over on both counts. He appeals.

## THE *A.B.* CASE

In *State in re A.B.*, 936 P.2d 1091 (Utah Ct.App.), *cert. denied*, 945 P.2d 1118 (Utah 1997), this court considered and rejected a number of constitutional challenges to Utah's Serious Youth Offender Act (Act). First, we determined that the three retention factors were rationally related to the legislative purpose of the Act so as not to violate article I, section 24 of the Utah Constitution or the Equal Protection Clause of the United States Constitution. *See id.* at 1099. Specifically, we concluded that the Act remedied the constitutional defects of its predecessor statute by creating a strong presumption that cases involving inherently violent and aggressive offenses by juveniles sixteen and seventeen

years of age will be transferred to district court and that the Act serves a legitimate purpose, namely addressing the increase in "violent" juvenile crime. *See id.* at 1098–99.

Second, we determined that the Act does not violate the right against self-incrimination under either the federal or state constitutions. *See id.* at 1100. "While it may be difficult to prove the non-violent retention factor [the third factor] without the accused's testimony, the right against self-incrimination protects accused persons from compelled self-incrimination, not from hard choices." *Id.* (citations omitted).

Third, we determined that requiring a juvenile to prove the three retention factors by clear and convincing evidence does not offend a fundamental right and, thus, does not violate substantive due process requirements of the federal or state constitutions. *See id.* "The right to a juvenile court proceeding is not fundamental," and "[t]he Legislature may at its prerogative determine that the high level of violent juvenile crime justifies the presumption of district court jurisdiction without offending due process principles." *Id.* at 1100–01 (citations omitted).

Finally, we rejected claims that the second and third retention factors were void for vagueness. *See id.* at 1101. Specifically, this court disagreed with A.B.'s claims that the phrase "lesser degree of culpability" in the second retention factor meant "degree of offense." *Id.* Rather, we concluded that the language "provides a means for the juvenile to overcome the strong presumption that he or she should be tried as an adult." *Id.* "If the degree of culpability language meant that a juvenile satisfying the second retention factor could reduce the underlying charge, it would effectively eliminate the legislatively created presumption of district court jurisdiction." *Id.* We also rejected A.B.'s argument that the language of the third retention prong was void for vagueness:

> [T]he juveniles' argument that the third retention factor is void for vagueness fails. Although the enumerated crimes are "inherently violent and aggressive," the crimes may be committed with varying levels of violence and aggression. *It is foreseeable that a juvenile could commit an enumerated offense with a low level of violence and aggression, so as to defeat the presumption of district court jurisdiction over a serious youth offender.*

*Id.* at 1101–02 (emphasis added).

## THE PRESENT CASE AND THE THIRD RETENTION FACTOR

█ In the present case appellant cites the above-referenced language to support his argument that this court announced a balancing test in *A.B.* We reject this contention. The language merely indicates that there may be circumstances in which a juvenile could prove the third retention factor. Contrary to appellant's contention, the third factor does not require the juvenile court to employ any sort of balancing test or to determine "the degree of aggression and premeditation and whether it warranted treatment as an adult." Rather, the disjunctively phrased statute places the burden on the juvenile to show by clear and convincing evidence that his or her role in the alleged offense was not violent, aggressive, *or* premeditated. *See* Utah Code Ann. § 78–3a–602(3)(b). This is not a balancing test, nor does the statute require the trial court to determine whether treatment as an adult is warranted. On the contrary, if the juvenile's role was violent, aggressive, *or* premeditated, the juvenile court's retention of the case is not proper.

█ To avoid the bindover and to prevail on the third retention factor, appellant had to prove that he did not act in any of the three ways listed. He did not do this. The juvenile court focused on two of the three requirements—aggression and premeditation. It concluded that appellant's actions were aggressive: he made a forced entry into the victim's home; he had a large knife in his possession; he put his hand on the victim's thigh and she testified that she was threatened by this gesture; and the victim was only eleven years old. The juvenile court also concluded that appellant's actions were premeditated: appellant and the accomplice talked about going into the victim's home prior to entry; appellant knew or had reason to believe that the victim was home alone;

appellant had been at the victim's home earlier and had been denied entry; and appellant returned to the victim's home. Appellant fails to contest these conclusions or the underlying testimony. His inability to prove that his actions were not aggressive was fatal to his efforts to avoid a bindover to district court. That he also could not prove that his actions were not premeditated simply provides a separate, fully adequate justification for denying retention. And, given the scheme of the statute, it is inconsequential that his actions were not especially violent.

Accordingly, the juvenile court's order is affirmed.