2005 UT App 227

**STATE of Utah, in the interest of M.E.P., a person under eighteen years of age.**

**M.E.P., Appellant,**

v.

**State of Utah, Appellee.**

No. 20040348–CA.

Court of Appeals of Utah.

May 19, 2005.

Jack M. Morgan, Skordas & Caston & Morgan LLC, Salt Lake City, for Appellant.

Mark L. Shurtleff, Attorney General, and Kenneth A. Bronston, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges DAVIS, GREENWOOD, and ORME.

## OPINION

GREENWOOD, Judge:

¶ 1 Defendant M.E.P., a minor, seventeen years of age, appeals the juvenile court's order binding him over to the district court to stand trial as an adult under the Serious Youth Offender Act (the SYOA), *see* Utah Code Ann. § 78-3a-602 (2002), on a charge of aggravated assault, *see id.* § 76-5-103(1)(a) (2003). Defendant argues that the juvenile court should have retained jurisdiction over the case because he satisfied, by clear and convincing evidence, all three of the statutory retention factors. *See id.* § 78-3a-602(3)(b). This appeal turns on whether Defendant established the third factor—"that [his] role in the offense was not committed in a violent, aggressive, or premeditated manner." *Id.* § 78-3a-602(3)(b)(iii). We affirm.

## THE SERIOUS YOUTH OFFENDER ACT

¶ 2 The SYOA requires a prosecution charging a minor, sixteen years of age or older, with one of nine enumerated felonies, including the charge Defendant faced—second degree felony aggravated assault—to be filed by criminal information with the juvenile court. *See id.* § 78-3a-602(1). The SYOA requires the juvenile court to conduct a preliminary hearing at which the State must establish probable cause to believe that an enumerated felony has been committed and that the juvenile defendant committed it. *See id.* § 78-3a-602(3)(a). The finding of probable cause creates "a strong presumption of district court jurisdiction." *State ex rel. A.B.,* 936 P.2d 1091, 1095 (Utah Ct.App. 1997). Once probable cause is found, the juvenile court may retain jurisdiction only if the juvenile defendant proves, by clear and convincing evidence, that the following three "retention factors" exist:

(i) the minor has not been previously adjudicated delinquent for an offense involving the use of a dangerous weapon which would be a felony if committed by an adult;

(ii) that if the offense was committed with one or more other persons, the minor

appears to have a lesser degree of culpability than the codefendants; and

 (iii) that the minor's role in the offense was not committed in a violent, aggressive, or premeditated manner.

Utah Code Ann. § 78–3a–602(3)(b).

## BACKGROUND

¶ 3 On November 14, 2003, Defendant and two classmates, Jason Webre and LaChelle Andreasen, were at Defendant's home working on a school project. The three classmates were joking around, hitting each other with a computer keyboard pad, which caused some pain (enough to make those hit say "ow"). Defendant hit Webre with the pad and Andreasen, sticking up for Webre, hit Defendant with the pad. Andreasen then turned to admire a painting, while Defendant, after saying "I'll show you," went over to his father's gun cabinet.

¶ 4 Defendant removed a pump shotgun from the cabinet and checked the chamber to make certain that the gun was not loaded.[1] Defendant then pumped the shotgun and pointed it at Andreasen, apparently intending only to scare her or to show off. Andreasen testified that she "yelled don't shoot me and turned around and started to go away. And I just—and tried to make my body small." Nevertheless, Defendant fired the gun, hitting Andreasen in the elbow, causing serious injury.

¶ 5 After shooting Andreasen, Defendant dropped the gun, started screaming, and ran upstairs—where his brother and his brother's girlfriend were—to call 911. However, because Defendant was too shaken, his brother's girlfriend made the call. When police arrived, Defendant was downstairs, cradling Andreasen's arm in a t-shirt.

¶ 6 Defendant was charged under the SYOA with one count of second degree felony aggravated assault. See id. § 76–5–103(1)(a) ("A person commits aggravated assault if he commits assault . . . and he . . . intentionally causes serious bodily injury to another . . . ."). The juvenile court found that

probable cause existed to support this charge. Defendant does not challenge this finding.

¶ 7 Addressing the retention factors, the juvenile court found that the parties stipulated that Defendant had satisfied the first two factors, but that Defendant failed to establish, by clear and convincing evidence, the third retention factor—that his "role in the offense was not committed in a violent, aggressive, or premeditated manner." Id. § 78–3a–602(3)(b)(iii). Although the juvenile court was "clearly convinced that [Defendant's] role in the offense was not premeditated," it found Defendant's actions both violent and aggressive. Specifically, the juvenile court noted:

> Folks, pulling a gun out of a gun cabinet, pumping it, pointing it[,] and pulling the trigger is a violent and aggressive act, purely and simply. Whether it is horseplay, whether it is intentional, it is still a violent and aggressive act . . . whatever the intent may be. . . . The mere fact that somebody engages in horseplay doesn't take it out of the realm of violence and aggression.

Accordingly, the juvenile court bound Defendant over to district court. This appeal followed.

## ISSUE AND STANDARD OF REVIEW

■ ¶ 8 Defendant challenges the juvenile court's bindover order pursuant to the SYOA, arguing that he met the third retention factor by showing that his role in the underlying offense was not committed in a violent or aggressive manner. See id. § 78–3a–602(3)(b)(iii). In support of this challenge, Defendant attacks both the juvenile court's interpretation of the third retention factor and its application to the facts of this case. "The interpretation of a statute presents a question of law that we review for correctness, and any underlying factual findings made by the juvenile judge in applying the statute are reviewed for clear error."

---

1. Only Defendant testified that he checked the gun to see if it was loaded. Neither Webre or Andreasen corroborated Defendant's testimony; Andreasen was looking at the painting and, while

Webre watched Defendant approach the gun cabinet and remove the shotgun, because the room was poorly lit, he could not see whether Defendant checked the gun.

*State v. Lara,* 2003 UT App 318,¶ 9, 79 P.3d 951, *cert. granted,* 90 P.3d 1041 (Utah 2004).

## ANALYSIS

### A. Interpretation of the Third Retention Factor

¶ 9 Defendant contends that because all of the offenses subject to the SYOA are inherently violent,[2] that the terms "violent" and "aggressive" in the third retention factor "must refer to more than the inherent violence of the offense itself; rather, the offense must have been committed in an *overly* violent and aggressive manner." (Emphasis added.). The juvenile court reviewed the plain language of the statute and determined that "the statute says what it says.... The fact that it may have involved horseplay [is not determinative], horseplay also can involve violence and aggression, clearly." Resolution of this issue requires us to interpret the SYOA's third retention factor.

¶ 10 " 'When interpreting a statute, this court looks first to the statute's plain language to determine the Legislature's intent and purpose. We read the plain language of the statute as a whole, and interpret its provisions in harmony with other statutes in the same chapter and related chapters.' " *State v. Ireland,* 2005 UT App 22,¶ 8, 106 P.3d 753 (quoting *Miller v. Weaver,* 2003 UT 12,¶ 17, 66 P.3d 592); *accord Salt Lake Child & Family Therapy Clinic, Inc. v. Frederick,* 890 P.2d 1017, 1020 (Utah 1995) ("When language is clear and unambiguous, it must be held to mean what it expresses, and no room is left for construction." (quotations and citation omitted)).

¶ 11 Guided by these rules, we conclude that the plain language of the third retention factor supports the position of the juvenile court and the State rather than that of Defendant. The third retention factor focuses the juvenile court's attention on "the minor's role in the offense," Utah Code Ann. § 78–3a–602(3)(b)(iii), and requires the juvenile court to determine whether the minor played his role in a "violent, aggressive, or premeditated manner." *Id.* There is nothing in the plain language of the statute requiring the juvenile court to find a level of violence, aggression, or premeditation greater than that inherent in the underlying offense, as Defendant contends. Indeed, Defendant's argument essentially asks this court to take on the role of the legislature and insert the term "overly" into the statute. We cannot do this. *See, e.g., State v. Paul,* 860 P.2d 992, 994 (Utah Ct.App.1993) (declining to interpret a statute in a manner that would "add a new provision that was not put there by the legislature.").[3]

¶ 12 This interpretation is supported by Utah case law, despite Defendant's assertion to the contrary. In particular, Defendant cites language from *State ex rel. A.B.,* 936 P.2d 1091 (Utah Ct.App.1997), regarding the SYOA's third retention factor:

> Although the enumerated crimes are "inherently violent and aggressive," the crimes may be committed with varying levels of violence and aggression. It is foreseeable that a juvenile could commit an

---

2. The SYOA enumerates the following offenses:
 (a) any felony violation of:
 (i) Section 76–6–103, aggravated arson;
 (ii) Subsection 76–5–103(1)(a), aggravated assault, involving intentionally causing serious bodily injury to another;
 (iii) Section 76–5–302, aggravated kidnaping;
 (iv) Section 76–6–203, aggravated burglary;
 (v) Section 76–6–302, aggravated robbery;
 (vi) Section 76–5–405, aggravated sexual assault;
 (vii) Section 76–10–508, discharge of a firearm from a vehicle;
 (viii) Section 76–5–202, attempted aggravated murder; or
 (ix) Section 76–5–203, attempted murder; or
 (b) an offense other than those listed in Subsection (1)(a) involving the use of a dangerous

weapon which would be a felony if committed by an adult, and the minor has been previously adjudicated or convicted of an *offense* involving the use of a dangerous weapon which also would have been a felony if committed by an adult.

Utah Code Ann. § 78–3a–602(1) (2002).

3. Because we conclude that the plain language of the statute clearly and unambiguously expresses the legislature's intent, we do not consider the SYOA's legislative history. *See Visitor Info. Ctr. Auth. v. Customer Serv. Div., Utah State Tax Comm'n,* 930 P.2d 1196, 1198 (Utah 1997) ("Unless the statute on its face is unclear or ambiguous, we find no need to delve into the uncertain facts of legislative history.").

enumerated offense with a low level of violence and aggression, so as to defeat the presumption of district court jurisdiction over a serious youth offender.

*Id.* at 1101–02. Defendant contends that this language means that to bind him over to the district court, the juvenile court had to find that his role in the aggravated assault was more violent or more aggressive than that inherent in the charged offense. However, we rejected a similar challenge, based on the above-referenced language from *A.B.*, in *State ex rel. Z.R.S.*, 951 P.2d 1114 (Utah Ct.App.1998):

> The language [in *A.B.*] merely indicates that there may be circumstances in which a juvenile could prove the third retention factor. Contrary to [the juvenile's] contention, the third factor does not require the juvenile court to employ any sort of balancing test or to determine the degree of aggression and premeditation and whether it warranted treatment as an adult. Rather, the disjunctively phrased statute places the burden on the juvenile to show by clear and convincing evidence that his or her role in the alleged offense was not violent, aggressive, *or* premeditated.

*Id.* at 1116 (quotations omitted). Therefore, Defendant's argument fails because it asks us to disregard *Z.R.S.* and implement a balancing test by requiring the juvenile court to determine the degree of aggression and violence with which Defendant committed the offense, in order to determine whether it exceeds the violence and aggression of the charge itself.

¶ 13 Additionally, Defendant's argument improperly shifts the burden of proof on the third retention factor from the juvenile to the State. As noted, under the SYOA, once the State establishes probable cause to believe that a minor committed an enumerated offense, district court jurisdiction is presumed.

*See* Utah Code Ann. § 78–3a–602(3)(b). The minor can rebut this presumption only by establishing the three retention factors by clear and convincing evidence. *See id.* Following Defendant's theory, in addition to probable cause, the State would shoulder the extra burden of showing that the offense was committed in an overly violent, aggressive, or premeditated manner. This is a burden not imposed by the SYOA. Instead, the SYOA places the burden of showing an absence of violence, aggression, and premeditation squarely upon Defendant's shoulders. *See id.* § 78–3a–602(3)(c). Thus, Defendant's argument also fails because it misallocates the burden.

¶ 14 In sum, Defendant's claim that the SYOA's third retention factor requires the juvenile court to find an extra layer of violence or aggression above that inherent in the charged offense fails because (1) it is contrary to the plain language of the statute, (2) it disregards our precedent, and (3) it misallocates the burden of proof from the juvenile to the State.[4]

### B. Application of the Third Retention Factor

¶ 15 Defendant next challenges the juvenile court's application of the third retention factor to the facts of his case. "[A]ny underlying factual findings made by the juvenile judge in applying [a] statute are reviewed for clear error." *State v. Lara,* 2003 UT App 318,¶ 9, 79 P.3d 951, *cert. granted,* 90 P.3d 1041 (Utah 2004). Defendant contends that his role in the offense was not committed in a violent or aggressive manner because it resulted from horseplay and he did not intend the resulting harm.

¶ 16 We have had only two opportunities to analyze a juvenile court's application of the terms "violent" and "aggressive" in the

---

4. While we are mindful of the burden that a juvenile faces in proving that his role in an inherently violent offense was not, in fact, violent, this does not justify a departure from the plain language of the statute. The SYOA creates "a strong presumption that cases involving inherently violent and aggressive offenses by juveniles sixteen years of age and older will be transferred to the district court." *State ex rel. A.B.,* 936 P.2d 1091, 1099 (Utah Ct.App.1997). Al-

though such a high presumption may, at times, thrust juveniles who would benefit from the rehabilitative nature of the juvenile system into the world of adult criminal sanctions, it implements the legislative goals of emphasizing public safety, accountability, and punishment for certain violent juvenile offenders, with a lesser goal of rehabilitation. *See id.* at 1098. "This was a legislative policy decision that this court will not strike, absent unconstitutionality." *Id.*

SYOA's third retention factor: *State ex rel. Z.R.S.*, 951 P.2d 1114 (Utah Ct.App.1998); and *Lara*, 2003 UT App 318, 79 P.3d 951. In *Z.R.S.*, the juvenile was charged with aggravated burglary and aggravated assault for breaking into a house with an eleven-year-old girl present, burglarizing the house, and terrorizing the girl. *See* 951 P.2d at 1115. We affirmed the juvenile court's conclusion that the juvenile's actions were aggressive based on the facts that "he made a forced entry into the victim's home; he had a large knife in his possession; he put his hand on the victim's thigh and she testified that she was threatened by this gesture; and the victim was only eleven years old." *Id.* at 1116. Also important was the juvenile's failure to contest these conclusions or the underlying testimony. *See id.* at 1117. "His inability to prove that his actions were not aggressive was fatal to his efforts to avoid a bindover to district court," even though his actions were not particularly violent. *Id.*

¶ 17 In *Lara*, we reversed the juvenile court's bindover order because the juvenile met the three retention factors. *See* 2003 UT App 318 at ¶ 37, 79 P.3d 951. In *Lara*, the juvenile was charged with aggravated robbery when he drove away in a stolen vehicle after two of his friends forced the driver out of the vehicle at gunpoint. *See id.* at ¶¶ 2, 26. The juvenile's only role in the offense was to drive the victim's car away from the scene; he did not wield a gun or even approach the victim. *See id.* at ¶ 26. His liability for the crime was purely as an accomplice. *See id.* Therefore, we determined that his role in the offense "was neither violent nor aggressive." *Id.* at ¶ 31.

 ¶ 18 In the instant matter, the juvenile court, in binding over Defendant to district court, concluded that even if horseplay was involved, "pulling a gun out of a gun cabinet, pumping it, pointing it[,] and pulling the trigger is a violent and aggressive act, purely and simply." In addition, the underlying testimony established that Defendant brandished the gun in response to being hit with a keyboard pad by Andreasen; he promised Andreasen "I'll show you," before he did so; and Andreasen responded to Defendant's actions with overt fear, yelling "don't shoot me" and trying to make her body small.

¶ 19 As can be seen, Defendant's role in the aggravated assault was more akin to the juvenile's in *Z.R.S.* than *Lara*. In *Lara*, the juvenile was quite removed from the violence and aggression of the underlying offense to which he was an accomplice, and thus his role was not violent or aggressive. *See* 2002 UT App 318 at ¶¶ 26, 29, 31. In Defendant's case, regardless of his claim that he was only joking, he obtained a gun, cocked it, and pulled the trigger with, at least, the intent and result of causing fear in his victim. As in *Z.R.S.*, Defendant's role in the offense was as the principal cause of the harm. *See* 951 P.2d at 1116. Moreover, unlike the juveniles in both *Z.R.S.* and *Lara*, Defendant's act caused actual serious bodily injury to his victim.

¶ 20 Based on these factual findings, Defendant's lack of contrary proof, and our case law, we conclude that the juvenile court's determination that Defendant failed to prove that his role in the offense was not violent or aggressive was not clearly erroneous. Accordingly, we hold that Defendant failed to meet his burden of proof, and the juvenile court's order binding over Defendant to district court to stand trial as an adult is affirmed.

## CONCLUSION

¶ 21 The juvenile court's bindover order is affirmed because (1) the SYOA's third retention factor does not require a finding that the minor act with a level of violence and aggression greater than that inherent in the underlying offense, and (2) the juvenile court correctly applied the third retention factor to determine that Defendant failed to prove that his role in the aggravated assault was not violent or aggressive.

¶ 22 WE CONCUR: JAMES Z. DAVIS and GREGORY K. ORME, Judges.