2003 UT App 318

STATE of Utah, Plaintiff and Appellee,

v.

Miguel Angel LARA, Defendant and Appellant.

No. 20010484–CA.

Court of Appeals of Utah.

Sept. 25, 2003.

Joan C. Watt and John D. O'Connell Jr., Salt Lake Legal Defender Association, Salt Lake City, for Appellant.

Mark L. Shurtleff, Attorney General, and Laura B. Dupaix, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges JACKSON, BENCH, and DAVIS.

## OPINION

JACKSON, Presiding Judge:

¶ 1 Appellant Miguel Angel Lara appeals a judgment of conviction for theft, a second-degree felony, in violation of Utah Code Ann. § 76–6–404 (1999). We reverse and remand.

## BACKGROUND

¶ 2 Lara was charged in juvenile court with aggravated robbery. Lara was sixteen at the time of the offense. Pursuant to Utah Code Ann. § 78–3a–602 (2002) (Serious Youth Offender Act), the juvenile court determined that Lara had not shown by clear and convincing evidence that he met all three of the statutory retention conditions, which would have permitted the juvenile court to retain jurisdiction. *See id.* § 78–3a–602(3)(b). Thus, on January 2, 2001, the juvenile court bound Lara over for trial in district court to be tried as an adult.

¶ 3 On January 22, 2001, Lara moved the district court to transfer him from the county jail to the juvenile detention center while his case was pending. The district court granted the motion. On the same day, Lara moved the district court to quash the juvenile court's bindover order. He did not challenge the juvenile court's finding of probable cause to believe that he had committed aggravated robbery. Instead, he challenged the juvenile court's ruling that he had not met the requisite retention factors by clear and convincing evidence. The State responded that because the juvenile court's bindover order was final and appealable, it was not reviewable by the district court. Instead, the State contended, the only proper venue for challenging the juvenile court's order was to appeal to the court of appeals. Lara filed an appeal in this court on January 31, 2001, challenging the juvenile court's bindover order.

¶ 4 On February 5, 2001, the district court held a hearing on Lara's motion to quash. Initially, the district court believed it retained jurisdiction to address the motion, heard argument on the motion and considered its merit. Ultimately, however, the district court said that it could not review the bindover order while an appeal from that order was pending. The district court asked defense counsel whether he was considering withdrawing the appeal, and defense counsel stated his preference that the district court review the bindover order. Defense counsel asked whether Lara could withdraw the appeal without prejudice, and the district court judge responded, "You have met the time constraints. You can appeal it after the trial, as you point out. You can appeal at any point in the interim. I guess you could wait for my decision and then appeal it.... I would say you withdraw it without prejudice."

¶ 5 The State reminded the district court that it did not have jurisdiction to review the bindover order and that Lara's only available remedy was to obtain appellate review from the court of appeals.

¶ 6 On February 14, 2001, Lara filed a motion with this court to voluntarily dismiss his appeal. The motion was accompanied by Lara's affidavit stating that he did not wish to pursue his appeal and that he understood that "once this appeal is withdrawn, it cannot be reinstated." The motion did not ask that the dismissal be without prejudice. We dismissed the appeal pursuant to Lara's motion on February 15, 2001.

¶ 7 On March 6, 2001, the district court issued a memorandum decision stating that it did not have jurisdiction to review the juvenile court's bindover order. Subsequent to that memorandum decision, Lara filed no motion with this court to reinstate his appeal.

¶ 8 On March 30, 2001, Lara pleaded guilty to the lesser offense of second-degree felony theft on the condition that he be permitted to appeal the juvenile court's bindover order. On May 30, 2001, Lara filed a notice of appeal from his conviction and sentence.

## ISSUES AND STANDARDS OF REVIEW

¶ 9 Lara challenges the juvenile court's bindover order pursuant to the Serious Youth Offender Act, arguing that he met the retention factors set forth in Utah Code Ann. § 78–3a–602(3)(b) (2002). The interpretation of a statute presents a question of law that we review for correctness, and any underlying factual findings made by the juvenile judge in applying the statute are reviewed for clear error. *See State v. Pena*, 869 P.2d 932, 936 (Utah 1994).

¶ 10 The State contends that this court does not have jurisdiction to entertain Lara's first challenge because the direct appeal from the juvenile court's bindover order was dismissed and not timely reinstated. Whether a court has subject matter jurisdiction is a question of law that we review for correctness. *See Beaver County v. Qwest, Inc.*, 2001 UT 81, ¶ 8, 31 P.3d 1147.

## ANALYSIS

¶ 11 Lara asks us to review the juvenile court's bindover order using one of three possible approaches: (1) by reinstating his direct appeal from the juvenile court's bindover order; (2) by reviewing the district court's determination that it had jurisdiction over Lara; or (3) by considering Lara's request for extraordinary relief.[1]

### I. Reinstatement of Dismissed Appeal

¶ 12 We must first address the State's claim that we do not have jurisdiction to entertain Lara's direct challenge to the juvenile court's bindover order. The State first relies on *State v. Houskeeper*, 2002 UT 118, 62 P.3d 444, for the proposition that once a case is bound over to district court, an appellate court will have no jurisdiction to hear the challenge unless that order is timely appealed. It is true that the procedural posture of *Houskeeper* is strikingly similar to the case at bar. In *Houskeeper*, the defendant was bound over by the juvenile court, filed a timely notice of appeal, voluntarily withdrew that appeal, and was ultimately convicted and sentenced by the district court.

*See id.* at ¶¶ 3–9. He sought to directly challenge the bindover order, but the supreme court determined that it was a final, appealable order that must be immediately appealed, and since he voluntarily withdrew his appeal the supreme court did not have jurisdiction to consider the challenge. *See id.* at ¶ 23.

¶ 13 However, the case at bar presents a threshold issue not present in *Houskeeper.*

> [W]hile defendant timely filed a notice of appeal of the bind-over order with the court of appeals, he *voluntarily* withdrew the appeal, which was ordered dismissed by the court of appeals. Consequently, defendant *waived* his right to appeal the bind-over order, and we have no jurisdiction to consider his contentions.

*Id.* (emphasis added). Voluntariness of the withdrawal was not an issue in *Houskeeper.* Voluntariness was taken for granted in that case, and it was precisely because of that voluntariness that Houskeeper's right to appeal was considered waived. *See id.*

¶ 14 In the present case, however, Lara contends that the withdrawal of his appeal was not knowing and voluntary. The voluntariness of the withdrawal is a threshold issue that must be addressed before we can determine that *Houskeeper* controls the present case. If the withdrawal was knowing and voluntary, then *Houskeeper* controls and we must refuse jurisdiction. If, however, the withdrawal was not knowing and voluntary, then we must consider whether the appeal may be reinstated.

¶ 15 The State further cites *State v. Clark*, 913 P.2d 360, 363 (Utah Ct.App.1996), for the proposition that, once an appeal has been dismissed and remitted, the appellate court loses jurisdiction and the dismissal acts as "an adjudication on the merits," thereby barring a subsequent challenge. *Id.* Because Lara's appeal was dismissed and not timely reinstated, the State argues, we have no jurisdiction to consider the appeal.

¶ 16 *Clark* does not hold that a motion to reinstate an appeal must be made

---

1. Because we grant the relief Lara requests in the form of reinstating his original appeal, we do not address the second and third alternative grounds for relief.

prior to issuance of the remittitur. It holds instead that the dismissal of an appeal for failure to prosecute acts as a judgment on the merits and becomes res judicata, thus barring further direct appeal. *See id.* at 362. *Clark's* procedural posture differed from this case, in that Clark's appeal was dismissed pursuant to rule 3(a) of the Utah Rules of Appellate Procedure, whose counterpart may be found in rule 23A. Rule 23A sets forth a specific procedure, inapplicable to this case, *see* Utah R.App. P. 23A ("An appeal dismissed for *failure to take a step* other than the timely filing of a notice of appeal may be reinstated by the court upon motion of the appellant.") (Emphasis added.), for reinstating an appeal dismissed pursuant to rule 3A. In *Clark,* the appellant did not avail himself of the procedures outlined in rule 23A for reinstating appeals, and we thus refused to reinstate his appeal. *Clark* appears inapplicable.

■ ¶ 17 Unlike *Clark,* the present case deals with an appeal dismissed pursuant to a stipulated motion to dismiss. Lara directs us instead to *State v. Tuttle,* 713 P.2d 703 (Utah 1985), for the proposition that the right to appeal in criminal cases is a fundamental right and, as such, requires a presumption against waiver of appeal. *See id.* at 704. This is so even in extreme cases of dismissal, such as dismissal due to escape from custody, where it appears that the defendant "has [not] actually made a decision to abandon his appeal." *Id.* If the dismissal was due to the defendant's request, and the underlying appeal *collaterally* attacked the conviction, the burden of proof may, but does not necessarily, shift to the defendant to demonstrate that the waiver of right to appeal was not knowing or voluntary. *See Bruner v. Carver,* 920 P.2d 1153, 1155–56 (Utah 1996) (holding it did not offend due process for district court to place burden of proof on defendant to show lack of knowing and voluntary waiver). In that case, the supreme court refused to

reinstate an appeal after it was withdrawn because Bruner's affidavit stated he knowingly and voluntarily withdrew his appeal and that he understood that, once the appeal was withdrawn, it could not be reinstated. *See id.* at 1154–55. Bruner thus failed to prove lack of knowing and voluntary waiver. *See id.* at 1156.[2]

¶ 18 The supreme court allowed the burden to shift to Bruner to prove lack of knowing and voluntary waiver, because it is "not difficult to understand" the lesser rights being waived in a collateral attack, as compared with the complex process of pleading guilty, and because the presumption of innocence no longer applies after conviction. *Id.* Bruner does not *mandate* that the defendant bear the burden of proof to show lack of knowing and voluntary waiver—rather, it simply holds that it did not offend due process for the trial court to so require. *See id.*

¶ 19 Although the supreme court in *Bruner* characterized as less weighty the rights a defendant waives when moving to dismiss an appeal that collaterally attacks a conviction, *see id.,* this case differs significantly from *Bruner.* First, at the time of Lara's first appeal, he had not yet been convicted, and the presumption of innocence *did* still apply. Second, Lara does not seek to collaterally attack a conviction, as Bruner did through seeking extraordinary relief, but seeks instead to directly attack an allegedly erroneous bindover order. Third, the rights Lara purportedly waived by dismissing his appeal included the right to significantly different treatment by a juvenile court rather than a district court, a right Bruner clearly was not entitled to.

¶ 20 Fourth, although Lara filed an affidavit substantially identical to Bruner's affidavit, Lara requested to withdraw his appeal pursuant to assurances by the district court itself that the withdrawal would be without

---

2. The dissent considers Lara's unequivocal affidavit to be the end of the inquiry. However, we note that in other contexts, unequivocal statements of knowing and voluntary waiver have nevertheless been set aside. *See, e.g., State v. Norris,* 2002 UT App 305, ¶ 13, 57 P.3d 238 (allowing defendant to withdraw conditional guilty plea in spite of flawless plea colloquy and defen-

dant's own assertion that plea was made knowingly and voluntarily where court and State made unrealizable promises in exchange for plea); *State v. Thurman,* 911 P.2d 371, 375 (Utah 1996) (holding guilty plea was not knowing because defendant did not understand the elements of the crime, in spite of defendant's unequivocal statements to the contrary).

prejudice. Several times during the proceedings the trial court opined that the direct appeal from the bindover order could be reinstated should the district court enter a ruling adverse to Lara. The district court asked Lara's counsel, "Mr. O'Connell, are you considering withdrawing your appeal *now that you've [timely filed a notice of appeal]?*" Further, the district court stated, "You have met the time constraints. You can appeal it after the trial, as you point out. You can appeal it at any point in the interim. I guess you could wait for my decision and then appeal it." This indicates that the trial court considered the notice of appeal a mere formality that, once timely filed, indefinitely preserved Lara's right of appeal.

¶ 21 In fact, the district court's memorandum decision expressly stated that the appeal was reinstated on the basis that Lara and Lara's counsel relied on its prior assurances. The district court's memorandum decision stated:

> During the hearing, the Court initially opined that she could review the defendant's Motion and indicated that she would likely reach the merits of the defendant's Motion. *Based on that initial determination,* the defense counsel indicated that while he had filed an appeal in this case on behalf of the defendant, in order to preserve the defendant's rights, he would proceed to withdrawing that appeal without prejudice. However, as indicated above, upon further review of the case law, the Court now determines that the defendant was correct in directly appealing the bindover and *the appeal is reinstated.*

(Emphasis added.)

¶ 22 The waiver of the right to appeal must be made knowingly and voluntarily, or it is of no effect. *See Bruner*, 920 P.2d at 1155 (stating "courts generally indulge every reasonable presumption against waiver of" right to appeal) (citing *Barnard v. Wassermann*, 855 P.2d 243, 247 (Utah 1993) ("Waiver is deemed to occur when the totality of the circumstances indicates an *intentional* abandonment or relinquishment of a *known* constitutional right.") (Emphasis added.)). "Knowing" is defined as "[h]aving or showing awareness or understanding; well-informed."

Black's Law Dictionary 876 (7th ed.1999). In this case, it is difficult to see how the sixteen-year-old Lara could "[have] or show[ ] awareness or understanding" of his appellate rights when he was so erroneously informed by the district court judge's repeated and authoritative indications that he was not waiving the right to appeal. *Id.*

¶ 23 While we have determined that *Bruner* does not mandate that Lara bear the burden of proving lack of knowing and voluntary waiver, we conclude that he has nevertheless convincingly demonstrated such. Lara was promised significant false incentives, unrelated to his actual legal rights or sound strategy, to withdraw his appeal, and those incentives were unfair to Lara. Not only did Lara receive false assurances from the district court regarding his appellate rights, he was a sixteen-year-old minor in adult jail awaiting the outcome of a lengthy appeal. Lara was not entitled to pre-trial release supervised by Pre Trial Services due to the illegal immigration status of some of his family members. The district court assured him that it would remove him from adult jail and place him instead in more appropriate juvenile detention, but that it could only do so if he dismissed his appeal.

¶ 24 Accordingly, it would not be improper to reinstate Lara's direct appeal from the juvenile court's bindover order. Because the State "has [not] been prejudiced by the . . . lapse of time" resulting from this case's procedural and appellate labyrinth, "the appeal is reinstated." *State v. Tuttle*, 713 P.2d 703, 705 (Utah 1985).

## II. Merits of Juvenile Court Bindover Order

¶ 25 The juvenile court's bindover order was issued pursuant to Utah Code Ann. § 78–3a–602 (2002), which mandates that certain serious youth offenses, including the charge Lara faced, require bindover to district court for trial as an adult. Utah Code Ann. § 78–3a–602(3)(b), however, provides a list of retention conditions that, if met, require the juvenile court to retain jurisdiction. The juvenile must prove all of the following conditions:

(i) the minor has not been previously adjudicated delinquent for an offense involving the use of a dangerous weapon which would be a felony if committed by an adult;

(ii) that if the offense was committed with one or more other persons, the minor appears to have a lesser degree of culpability than the codefendants; and

(iii) that the minor's role in the offense was not committed in a violent, aggressive, or premeditated manner.

*Id.*

¶ 26 The first of these factors is admitted by the State. Lara properly marshaled the evidence in support of the juvenile court's finding that he failed to establish the second two factors by clear and convincing evidence. The facts, as marshaled by Lara, are as follows:

1. [Lara] was a passenger in the backseat of the white car when its driver parked about three car lengths behind [the victim's] truck. [Lara] remained in the truck while the co-defendants approached and threatened [the victim], and may have been able to see the actions of the co-defendants....

2. Two of the co-defendants approached [the victim] and pointed a gun covered with a bandana at her. They made her kneel and turn around facing the street.

3. The co-defendants told [the victim] they were taking her money. When they learned she did not have money, they asked if the truck was hers and took the keys.

4. One of the men ran over and looked in the window of the truck, then went back and talked in Spanish with the gunman.

5. The man without the gun then ran to the white car. The man returned within 20–25 seconds. [Lara] got out of the car and went to the truck. [The victim] did not see [Lara] until after the keys were taken from her. She did not see but thought the other man gave the keys to [Lara] while the man was at the white car.

6. [The victim] was about seven feet from the truck and on her knees when [Lara] got into it. The gunman was pointing the gun at her. [Lara] did not approach [the

victim]. [Lara] was six or seven feet from her. [Lara] drove away alone, but stopped at the corner to let someone get into the truck.

7. After [Lara] got in the truck, the robber without the gun ripped a necklace off [the victim's] neck.

8. [The victim] thought the entire crime took about four minutes. [Lara] was involved for about a minute.

9. Officer Gardner observed the truck at 600 North and Redwood Road. After running a check on the truck, the officer eventually stopped the truck at the Salt–Aire [sic] exit off of I–80. [Lara] was driving the truck when it was stopped. One of the robbers was in the truck and a gun was under the passenger seat. Officers also found a necklace in the truck.

¶ 27 The second factor, a lesser degree of culpability, has been met, despite the juvenile court's ruling to the contrary. This factor requires "that if the offense was committed with one or more other persons, the minor appears to have a lesser degree of culpability than the codefendants." Utah Code Ann. § 78–3a–602(3)(b)(ii). The juvenile court incorrectly interpreted this retention condition to preclude a finding of lesser culpability in circumstances where the juvenile acted as a co-participant with a violent and aggressive person. The juvenile judge pointed out that the other men were acting in a violent, aggressive and threatening manner when Lara got out of the car and was handed the keys to the victim's standard transmission truck. Rather than focusing on Lara's role in the incident, the juvenile court focused on the actions of the codefendants and concluded that because the codefendants were acting violently when Lara was given the keys, Lara was equally culpable. To bolster the conclusion of equal culpability, the juvenile court stated it "was a violent act, there was a gun being used and the victim was in a very difficult position" when Lara received the keys and got into the truck.

¶ 28 The juvenile court's focus on the actions of the other participants was an erroneous application of the statute. The statute requires a focus on the juvenile's behavior and a comparison with the behavior of the

other perpetrators. The juvenile court's analysis, which looked at the nature of the criminal offense itself, would require a determination in all cases that the juvenile's behavior was as culpable as the others involved in the crime. This is because (1) the juvenile court refused to *compare* the juvenile's behavior with the others involved in the crime, focusing instead on the crime itself, and (2) the question only arises in the context of violent crimes, pursuant to the Serious Youth Offender Act. Thus, if we affirmed the juvenile court's analysis, no juvenile could ever meet the retention factors because violent crimes will always be in issue. This result would render the retention factors inoperable in all cases, and would violate our rules of statutory construction.

¶ 29 Further, the juvenile court incorrectly indicated that in order to have lesser culpability, Lara would have had to play no role in the crime other than simply riding along in the car. However, if Lara played no role in the crime, he would not have been charged, and certainly would not have been bound over pursuant to probable cause. Contrary to the juvenile court's application of the second retention factor, a juvenile need not be entirely uninvolved with the crime to merit a finding of lesser culpability. Rather, the relevant inquiry is whether the juvenile is less blameworthy than the codefendants because he was not the initiator or driving force behind the crime, did not use a weapon or threaten the victim, or otherwise played a less active role in the crime.

¶ 30 Lara met the second retention condition since the State never offered evidence that he participated in the actual assault of the victim. He remained in the backseat of the car while two of his three friends perpetrated the armed robbery. His role was limited entirely to driving the victim's vehicle away. Unless the State offered evidence of conspiracy or some other form of aiding, such as encouragement, which it did not, Lara clearly was less culpable than the other perpetrators.

¶ 31 Lastly, Lara met the third condition, requiring that his role in the crime not be done in a violent, aggressive, or premeditated manner. As discussed above, it is clear that his role was neither violent nor aggressive. According to the terms of section 78–3a–602(3)(b)(iii), Lara must affirmatively prove that his role was not carried out in a premeditated manner.

¶ 32 Looking at the record as a whole, it is obvious that Lara's role was not premeditated but incidental. The State argues that Lara did not offer any evidence, but relied on statements by counsel, to establish this factor. Lara's counsel argued that the evidence showed the more active participants in the crime took keys from the victim, started to take her vehicle, and then discovered that the vehicle had a standard transmission, which they could not drive. Upon that discovery, the men returned to their own car, where Lara was sitting, and told him to drive the car, which he did.

¶ 33 The State's contention that Lara's argument was not based on evidence before the juvenile court is incorrect. Lara's counsel argued legitimate inferences all solidly based on evidence in the record. Specifically, the record shows that Lara's codefendants took the keys and looked in the truck's window. They then went to the car where Lara was sitting, handed him the keys, and spoke to him in Spanish. After that exchange, Lara got out of the car and drove the victim's truck away. Lara's counsel argued that this evidence showed that the codefendants could not drive a truck with standard transmission. When they discovered that the truck had a standard transmission, they changed their plan and required Lara to drive the truck.

¶ 34 The State's contrary interpretation of the evidence, that Lara participated in a prearranged plan to drive the vehicle away, does not square with the facts in record. Had Lara prearranged to drive the truck, it was quite inconsistent with their arrangement for the codefendants to approach the truck, look inside, have a discussion, return to the car, and engage Lara in a dialogue before handing him the keys.

¶ 35 Thus, we conclude Lara met the third retention condition, showing that his role in the plan was not violent, aggressive or premeditated. Accordingly, the juvenile court

erred in binding Lara over for trial in district court.

## CONCLUSION

¶ 36 Lara's original direct appeal of the juvenile court's bindover order must be reinstated. Although *Houskeeper* is very similar to the present case, it does not control our ultimate disposition because *Houskeeper* did not deal with the threshold issue of whether the waiver of the right to appeal was knowing and voluntary.[3] Further, we have determined that Lara's dismissal of his appeal was not knowing and voluntary given the district court's false assurances, as well as Lara's young age combined with the confusing nature of the procedural issues at stake. The district court itself drifted into error regarding those procedural issues, leading a sixteen-year-old boy by the hand to misunderstanding. Thus, when Lara dismissed his direct appeal of the bindover order, it was not done so knowingly or voluntarily.

¶ 37 On direct review of the bindover order, we determine that the juvenile court erred in concluding Lara did not demonstrate the retention conditions outlined in Utah Code Ann. § 78–3a–602(3)(b) (2002). Lara's actions were without question less culpable than those of his codefendants. Further, Lara's actions were not violent, aggressive, or premeditated, as clearly shown by the evidence in the record. Thus, the juvenile court erred in binding Lara over for trial in district court in violation of section 78–3a–602(3)(b). The juvenile court's bindover order and Lara's plea, conviction and sentence in district court are all vacated and this case is remanded to juvenile court for further proceedings consistent with this opinion.

¶ 38 I CONCUR: JAMES Z. DAVIS, Judge.

BENCH, Judge (dissenting):

¶ 39 In straining to reach its desired result, the main opinion refuses to follow controlling precedent.

¶ 40 The approach outlined by the main opinion is unattainable because this court lacks jurisdiction to even consider the substance of the appeal. As recited in the main opinion, Lara filed a timely notice of appeal from the juvenile court's bind-over order on January 31, 2001. Subsequently, pursuant to Lara's own motion, we dismissed the appeal on February 15, 2001. Lara filed no timely motion to reinstate his appeal or to withdraw his motion. Consequently, on March 21, 2001, we remitted Lara's appeal of the bind-over order to the juvenile court. This remittitur ended our jurisdiction over any appeal relating to bind-over.

¶ 41 For us to take any action with regard to the juvenile court's bind-over order, we would have to recall the remittitur. However, our jurisdiction to recall a remittitur is extremely limited. We can recall a remittitur only "upon a showing that the remittitur was issued through fraud or inadvertence or was issued prematurely or otherwise improperly, or to correct an irregularity or error in the issuance of the remittitur." *Miller v. Southern Pacific Co.*, 82 Utah 307, 24 P.2d 380, 381 (1933); *see also Hi–Country Estates v. Foothills Water Co.*, 942 P.2d 305 (Utah 1996). Because this court did not erroneously remit the case, when we remitted, we lost appellate jurisdiction over all issues relating to bind-over. Lara's remedy, if any, can now only be sought through an extraordinary writ.

¶ 42 *State v. Clark*, 913 P.2d 360 (Utah Ct.App.1996), is fully consistent with these bedrock principles. In *Clark*, this court held that once a criminal appeal has been remitted to the district court, the appellate court loses all jurisdiction over the matter. *See id.* at 363. We went so far as to say that a dismissal for failure to timely file a brief on appeal acted as an adjudication on the merits, and that defendant could challenge his sentence only by extraordinary writ. *See id.*

¶ 43 In attempting to save this appeal, the main opinion erroneously relies on *State v. Tuttle*, 713 P.2d 703 (Utah 1985). By its own

---

**3.** The dissent expresses concern that this holding will confuse Utah jurisprudence in this area. However, this is not the case because it seems unlikely that a similar case will arise in the future, given the uniqueness of the facts involved here.

terms, however, *Tuttle* applies only to appeals dismissed because of a criminal's escape. In *Tuttle,* the supreme court allowed for reinstatement of a criminal appeal because the escapee's intent regarding his appeal could only be inferred. In contrast, here, Lara's intent in withdrawing his appeal of the juvenile court's bind-over order is undeniable. His motion to withdraw, "made on the grounds that [Lara] does not want to pursue an appeal," was supported by an affidavit. In his affidavit, Lara stated as follows:

> I, MIGUEL A. LARA, being first duly sworn according to law, on my oath depose and say:
>
> 1. I am the Defendant/Appellant in the above-entitled case.
>
> 2. It is my desire to withdraw my appeal at this time.
>
> 3. I am aware that I have the right to appeal my conviction and sentence to the Utah Court of Appeals; however, I do not wish to pursue this appeal.
>
> 4. I understand that once this appeal is withdrawn, it cannot be reinstated.
>
> 5. It is my desire to waive any and all rights to the appeal docketed in this case.
>
> 6. I am doing this knowingly and voluntarily and have not been threatened or otherwise induced in any way to withdraw this appeal.
>
> 7. I have consulted with my attorney with respect to this withdrawal and feel that it will not benefit me to pursue this appeal.

¶ 44 This case is directly controlled by *State v. Houskeeper,* 2002 UT 118, 62 P.3d 444, which was decided while Lara's case was still being briefed. Like Lara, Houskeeper was charged in juvenile court under the Serious Youth Offender Act (SYOA). *See id.* at ¶ 1. Like Lara, Houskeeper was transferred to district court after the juvenile court found that he had not proven the three SYOA retention factors by clear and convincing evidence. *See id.* at ¶¶ 1–3. Also like Lara, Houskeeper timely appealed the juvenile court's transfer order, but later filed a motion to voluntarily dismiss the appeal, which the court of appeals granted. *See id.* at ¶ 3.

Houskeeper, like Lara, then filed a motion in district court to quash the juvenile court's bind-over order. *See id.* at ¶ 4. When the district court denied the motion, Houskeeper petitioned the Utah Supreme Court for interlocutory review of that decision. *See id.* The supreme court denied the petition. *See id.* After a jury convicted Houskeeper of a lesser included offense, he appealed to the Utah Supreme Court arguing, inter alia, that the juvenile court had erred in finding that he had not proven all three retention factors. *See id.* at ¶¶ 9–10, 23.

¶ 45 The unanimous *Houskeeper* court held that "[b]ecause the [juvenile court] bind-over order was not timely appealed, we have no jurisdiction to hear challenges to the order." *Id.* at ¶ 23. Citing *M.C. v. State,* 916 P.2d 914, 916 (Utah Ct.App.1996), the supreme court observed that juvenile court bind-over orders are "final, appealable orders." *Houskeeper,* 2002 UT 118 at ¶ 23, 62 P.3d 444. The supreme court recognized that Houskeeper, like Lara here, had filed a timely notice of appeal from the juvenile court's bind-over order, but had then voluntarily withdrawn that appeal. *See id.* "Consequently, defendant waived his right to appeal the bind-over order, and [the supreme court had] no jurisdiction to consider his contentions." *Id.*

¶ 46 Just as Houskeeper waived his right to appeal a juvenile court bind-over order when he voluntarily dismissed his timely appeal, so too Lara waived his right to challenge the juvenile court's bind-over order. The main opinion claims that Lara's case is different from Houskeeper's because Lara did not *voluntarily* withdraw his appeal. His affidavit, however, plainly demonstrates otherwise. In *Bruner v. Carver,* 920 P.2d 1153, 1156 (Utah 1996), the Utah Supreme Court ruled that an affidavit even less comprehensive than Lara's sufficiently demonstrated a knowing and voluntary waiver of the right to appeal.

¶ 47 As recognized by the main opinion in footnote two, there have been instances where our supreme court has set aside "unequivocal statements of knowing and voluntary waiver." However, it is critical to note that these cases addressed the voluntariness

of a guilty plea, rather than the withdrawal of an appeal and, as demonstrated by our supreme court in *Bruner*, there is a fundamental distinction between the two types of waivers. *See Bruner*, 920 P.2d at 1156. "Guilty plea affidavits are significantly more complex and philosophically different than withdrawals of direct appeals. Because *a defendant gives up far less by withdrawing an appeal* than by entering a guilty plea, *the protections* accorded the former process *are logically more limited*." *Id.* (emphasis added). The supreme court explained that, with a guilty plea, the defendant forfeits a "panoply of constitutional rights," whereas with an appeal waiver, the defendant is "simply ending further review of his case." *Id.*

¶ 48 In sum, the approach of the main opinion cannot be reconciled with our prior case law. By straining to salvage Lara's appeal, my colleagues have created countless complications for the future. I therefore dissent.