**2015 UT App 224**

# THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF F.L.,
A PERSON UNDER EIGHTEEN YEARS OF AGE.

F.L.,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Opinion
No. 20140130-CA
Filed September 3, 2015

Second District Juvenile Court, Ogden Department
The Honorable Sharon S. Sipes
No. 982359

Samuel P. Newton, Attorney for Appellant

Sean D. Reyes and John J. Nielsen, Attorneys
for Appellee

JUDGE JOHN A. PEARCE authored this Opinion, in which JUDGES
JAMES Z. DAVIS and J. FREDERIC VOROS JR. concurred.

PEARCE, Judge:

¶1     F.L. appeals from the juvenile court's order binding him over to the district court to face trial as an adult on three counts of aggravated robbery. We conclude that the juvenile court misinterpreted Utah's Serious Youth Offender Act (the Act). We therefore vacate the juvenile court's bindover order and remand this matter to the juvenile court for further proceedings.

BACKGROUND

¶2    F.L. was born in 1996. He endured a troubled childhood, in part because of physical and emotional abuse he suffered at the hands of his father. F.L. and his siblings were removed from their home and placed with their aunt (Aunt). Aunt eventually became F.L.'s permanent guardian.

¶3    Throughout his youth, F.L. experienced academic and behavioral difficulties. When he was about fifteen years old, F.L. was adjudicated in the juvenile court for stealing money from Aunt, possessing tobacco, and shoplifting candy. When F.L. was about sixteen years old, his father died. F.L.'s behavioral issues and aggression increased. In 2012, F.L. struck Aunt with his fist. As a result of this incident, F.L. was sent to a group home and underwent a neuropsychological evaluation. The evaluation confirmed that F.L. has intellectual and cognitive limitations.

¶4    F.L.'s behavior improved in the group home's highly structured environment. After F.L. left the group home, he stayed with a cousin and her husband for six months. Thereafter, he moved from place to place, staying with relatives and friends. F.L. avoided living with Aunt because of her "home rules." Aunt was concerned with some of F.L.'s associations but could not obtain assistance from juvenile authorities because F.L.'s case had been closed.

¶5    In December 2013, when F.L. was approximately seventeen years and ten months old, F.L. and three adult associates drove from Kearns to a convenience store in Plain City at about 1:30 a.m. F.L. waited in the car while two of his friends entered the store wearing hoodies and bandannas and carrying facsimile handguns.[1] The two friends told the clerk that they were robbing the store and would not hesitate to shoot him if he

---

1. The weapons used in all of the robberies apparently consisted of one BB gun and one airsoft-style replica gun.

made any sudden movements. The two friends grabbed the money from the register and fled. F.L. shared in the robbery proceeds.[2]

¶6    About two hours later, the same group drove to a fast food restaurant in Farr West. F.L. and one friend entered the restaurant wearing ski masks and carrying the facsimile guns. F.L. had previously worked at the restaurant and knew how to open the register. F.L.'s friend pointed his gun at the counter attendant while F.L. emptied the till.

¶7    Five days later, F.L. and his three associates went to a convenience store in Slaterville at about 3:00 a.m. F.L. and two others entered the store together. F.L. took money from the register while one of his associates pointed a facsimile gun at the clerk's head.

¶8    The State filed a criminal information in the juvenile court charging F.L. with three counts of aggravated robbery. The parties stipulated to a set of facts and stipulated that there was probable cause to believe that the charged crimes had occurred and that F.L. had participated in those crimes. The juvenile court held a hearing to determine whether F.L. would remain in juvenile court or be bound over to face trial as an adult in the district court pursuant to the Act. Witnesses at the hearing included Aunt, a disability-education specialist, employees of the victimized businesses, and F.L.'s caseworker.

¶9    At the conclusion of the hearing, the juvenile court bound F.L. over for trial in the district court. The juvenile court later issued a written order that largely tracked its oral ruling. In the order, the juvenile court applied the Act's five statutory retention factors. Based on its analysis of the five factors, the

---

2. The State alleges in its brief that F.L. drove the car away from the first robbery. Although F.L. does not dispute this allegation, we have not been able to locate record support for it.

juvenile court found that F.L. had failed to carry his burden of proving by clear and convincing evidence that his bindover to the district court would be contrary to both his best interests and the best interests of the public. Accordingly, the juvenile court ordered that F.L. be bound over to the district court. F.L. appeals.

ISSUE AND STANDARD OF REVIEW

¶10    F.L. argues that the juvenile court erred in binding him over to the district court rather than retaining jurisdiction over him in juvenile court. Specifically, he argues that the juvenile court misinterpreted and misapplied a number of the retention factors identified in the Act. "The proper interpretation and application of a statute is a question of law which we review for correctness, affording no deference to the [juvenile] court's legal conclusions." *Bott v. Osburn*, 2011 UT App 139, ¶ 5, 257 P.3d 1022 (citation and internal quotation marks omitted); *see also In re W.H.V.*, 2007 UT App 239, ¶ 3, 164 P.3d 1279 (reviewing the juvenile court's interpretation of the Act's retention factors for correctness).[3]

---

3. The State argues that we should review the juvenile court's ultimate retention decision for an abuse of discretion. The State correctly asserts that the juvenile court has discretion to determine the best interests of the charged minor and the public. *Cf. In re J.F.*, 2013 UT App 288, ¶ 3, 317 P.3d 964 ("We review [a] challenge to the juvenile court's best interests determination for an abuse of discretion."). However, discretionary decisions must be based on correct interpretations of applicable statutory factors. *See State v. Sheehan*, 2012 UT App 62, ¶ 15, 273 P.3d 417 ("Our review of the district court's exercise of its discretion include[s] review to ensure that no mistakes of law affected a lower court's use of its discretion." (alteration in original) (citation and internal quotation marks omitted)); *cf. Carbaugh v.*

(continued…)

ANALYSIS

I. The Evolution of the Act

¶11 Throughout its history, the Act has governed determinations of whether sixteen- or seventeen-year-old minors charged with certain serious crimes will be tried in juvenile court or district court. However, over the past several years, the Act's procedure for making that determination has undergone a significant evolution. F.L.'s retention hearing occurred in the midst of these changes, after the Utah Legislature amended the Act in 2013 but before it enacted further amendments in 2015.[4]

¶12 As originally enacted by the Legislature, the Act stated,

> If the juvenile court finds the state has met its burden [of showing probable cause that the juvenile committed a crime governed by the Act], the court shall order that the defendant be bound over and held to answer in the district court in the same manner as an adult unless the juvenile court

---

(…continued)
*Asbestos Corp.*, 2007 UT 65, ¶ 7, 167 P.3d 1063 (determining that the district court abused its discretion when it based an evidentiary decision on an erroneous interpretation of the law).

4. After the 2015 amendments to the Act were enacted, F.L. submitted a supplemental-authority letter to this court pursuant to rule 24(j) of the Utah Rules of Appellate Procedure, suggesting that the 2015 amendments might apply retroactively to govern the juvenile court's bindover ruling in this case. However, we agree with the State that the events we are reviewing—F.L.'s retention hearing and the juvenile court's bindover ruling—are governed by the 2013 version of the Act. *See State v. Earl*, 2015 UT 12, ¶¶ 12–18, 345 P.3d 1153 (discussing retroactivity).

judge finds that all of the following conditions exist:

> (i) the minor has not been previously adjudicated delinquent for an offense involving the use of a dangerous weapon which would be a felony if committed by an adult;
>
> (ii) that if the offense was committed with one or more other persons, the minor appears to have a lesser degree of culpability than the codefendants; and
>
> (iii) that the minor's role in the offense was not committed in a violent, aggressive, or premeditated manner.

Utah Code Ann. § 78-3a-602(3)(b) (Michie Butterworth Supp. 1995). The minor bore the burden of proving the three retention conditions. *Id.* § 78-3a-602(3)(c). If the juvenile court found by clear and convincing evidence that all three conditions existed, the court was required to "order the minor held for trial as a minor" and "proceed upon the information as though it were a juvenile petition." *Id.* § 78-3a-602(3)(d). If the minor failed to establish all three factors, he or she would be bound over to the district court. We have described this version of the statute as "creating a strong presumption that cases involving inherently violent and aggressive offenses by juveniles sixteen years of age and older will be transferred to the district court." *In re A.B.*, 936 P.2d 1091, 1099 (Utah Ct. App. 1997).

¶13    In 2013, the Legislature amended the Act to focus retention decisions on the best interests of the minor and the public. *See* Utah Code Ann. § 78A-6-702(3)(b) (LexisNexis Supp. 2013). To this end, the 2013 amendment shifted away from the three retention conditions of the original Act and instead required the juvenile court to determine whether bindover to the district court would be contrary to the minor's and the public's best interests. The juvenile court was required to make this best

interests determination by considering "only" five enumerated factors:

> (i) whether the minor has been previously adjudicated delinquent for an offense involving the use of a dangerous weapon which would be a felony if committed by an adult;

> (ii) if the offense was committed with one or more other persons, whether the minor appears to have a greater or lesser degree of culpability than the codefendants;

> (iii) the extent to which the minor's role in the offense was committed in a violent, aggressive, or premeditated manner;

> (iv) the number and nature of the minor's prior adjudications in the juvenile court; and

> (v) whether public safety is better served by adjudicating the minor in the juvenile court or in the district court.

*Id.* § 78A-6-702(3)(c). Three of these five factors echoed the three retention conditions from the prior version of the Act, with the two additional factors addressing the minor's previous adjudications and public safety concerns. *See id.* The minor bore the burden of proving, by clear and convincing evidence, that bindover to the district court would be contrary to the best interests of both the minor and the public, as evaluated using the five factors. *Id.* § 78A-6-702(3)(d)–(e). If the juvenile court found that the minor had met his or her burden, the court was to order retention; otherwise, the minor was to be bound over to the district court. *Id.* § 78A-6-702(3)(b), (e).

¶14    In 2015, while F.L.'s appeal was pending, the Legislature again amended the Act. *See* Juvenile Offender Amendments, S.B.

167, 60th Leg., Gen. Sess. § 4 (Utah 2015). The 2015 amendment retained the 2013 framework of basing the retention determination on the best interests of the minor and the public, using the five exclusive factors. However, the fifth factor was expanded to include

> whether public safety and the interests of the minor are better served by adjudicating the minor in the juvenile court or in the district court, including whether the resources of the adult system or juvenile system are more likely to assist in rehabilitating the minor and reducing the threat which the minor presents to the public.

*Id.* Additionally, the minor's burden of proof for establishing the best interests of himself and the public was lowered to a preponderance of the evidence. *Id.*

¶15   Several initial observations about the Act's evolution will assist our analysis of the 2013 version of the statute. First, the amendments to the Act establish a trend of making it easier—although not necessarily easy—for the juvenile court to retain jurisdiction. Under the original Act, the minor's inability to prove any one of the three conditions would automatically result in bindover to the district court. *See In re W.H.V.*, 2007 UT App 239, ¶ 10, 164 P.3d 1279 (affirming bindover where minor could not prove that his alleged crime was not premeditated). Under the 2013 and 2015 versions, retention remains a possibility even when one of the original three conditions cannot be satisfied. And under the 2015 version, the minor's burden of proof regarding retention has been lowered from a clear and convincing evidence standard to a preponderance of the evidence standard.

¶16   Second, notwithstanding the retention-favorable changes described above, the Act's presumption remains that sixteen- and seventeen-year-old minors charged with the statutorily enumerated crimes will be bound over to the district court. The

Act mandates bindover to the district court *unless* the minor can prove by the applicable standard that bindover to the district court would be contrary to both his best interests and the best interests of the public. *See* Utah Code Ann. § 78A-6-702(3); Juvenile Offender Amendments, S.B. 167, 60th Leg., Gen. Sess. § 4 (Utah 2015).

¶17    Finally, the 2013 amendment in particular increased the discretion of the juvenile court in making retention determinations. Under the original Act, the result was entirely determined by whether the minor could establish all three bindover conditions—if yes, retention; if no, bindover. Under the later versions, the juvenile court possesses the discretion inherent in making best interests determinations. *Cf. In re J.F.*, 2013 UT App 288, ¶ 3, 317 P.3d 964 ("We review Mother's challenge to the juvenile court's best interests determination for an abuse of discretion." (citing *In re adoption of T.H.*, 2007 UT App 341, ¶ 9, 171 P.3d 480)). The juvenile court also has the discretion to weigh and balance the five enumerated retention factors. *See* Utah Code Ann. § 78A-6-702(3) (LexisNexis Supp. 2013); *cf. State v. Perea*, 2013 UT 68, ¶ 119, 322 P.3d 624 (discussing the district court's discretion to weigh sentencing factors). Thus, although the juvenile court's discretion is circumscribed by the five retention factors, the later versions of the Act grant the juvenile court significantly more discretion than the original version.

¶18    With this history and these considerations in mind, we turn to our evaluation of the juvenile court's interpretation of the Act and its decision to bind F.L. over to the district court.

## II. The Act's Retention Factors

¶19    At his retention hearing, F.L. stipulated that probable cause existed to believe that the crimes charged had been committed and that he had committed them. F.L. also stipulated to a set of facts that supported probable cause. Thus, the juvenile court's only task was to determine whether F.L.'s prosecution

should proceed in district court or juvenile court. *See* Utah Code Ann. § 78A-6-702(3) (LexisNexis Supp. 2013). F.L. bore the burden of demonstrating by clear and convincing evidence that, considering the retention factors, "it would be contrary to the best interest of the minor and the best interests of the public to bind [him] over to the jurisdiction of the district court." *Id.* § 78A-6-702(3)(d).

¶20 The juvenile court made factual findings on each of the five retention factors. Based on these findings, and without further analysis, the juvenile court concluded that F.L. had "not shown by clear and convincing evidence that it would be contrary to his best interests *and* the best interests of the public for this case to be adjudicated in the district court." Accordingly, the juvenile court ordered F.L. bound over to the district court.

¶21 On appeal, F.L. argues that the juvenile court "erroneously found that [he] failed to meet all of the statutory retention factors." We do not agree with F.L. that all five of the Act's retention factors necessarily support retention of this matter in the juvenile court. However, in the course of his argument, F.L. has identified errors in the juvenile court's interpretation and application of the second, third, and fourth retention factors.[5]

A.     Degree of Culpability

¶22 The Act's second retention factor requires the juvenile court to consider "whether the minor appears to have a greater or lesser degree of culpability than [any] codefendants." Utah Code Ann. § 78A-6-702(3)(c)(ii) (LexisNexis Supp. 2013). The juvenile court found,

---

5. We do not address the juvenile court's application of the first and fifth factors. *See* Utah Code Ann. § 78A-6-702(3)(c)(i), (v) (LexisNexis Supp. 2013).

a. With respect to the [first] robbery . . . , [F.L.] does not have a lesser degree of culpability with the codefendants in that [F.L.] "wait[ed] in the getaway car," that he "participated and received a share of the spoils of that robbery" and, that [he], "at a minimum, did aid, assist or encourage the other participants in the obtaining [of] money . . . through the use of gun facsimiles."

b. With respect to the [second] robbery . . . , [F.L.] does not have a lesser degree of culpability with the codefendants in that [F.L.], along with another adult codefendant, entered a [restaurant], both individuals had guns, and "by using a dangerous weapon or weapons, to wit, facsimiles of guns, did use force or fear to obtain money from the immediate presence (cash register) of the employee(s) of said [restaurant] against their will;" [F.L.], "at a minimum, did aid, assist or encourage the other participants in the obtaining [of] money from the above establishments through the use of gun facsimiles;" and the testimony from [an] employee that two men entered the restaurant, both had guns, one individual pointed a gun at the employee while the other individual "got into the register."

c. With respect to the [third] robbery . . . , [F.L.] does not have a lesser degree of culpability with the codefendants in that [F.L.] "and two adult codefendants did enter a [store] where weapons were brandished, cigarettes were taken and all the paper money in the register was taken. [F.L.] physically took all the paper money and 15 dollar coins from the register while the clerk was being held at gunpoint by another co-defendant."

(Second omission in original.) F.L. argues that the juvenile court erroneously evaluated his "degree of culpability" in two ways:

"First, the court equated commission of the crime with equal culpability for the entire crime. Second, the court failed to consider F.L.'s culpability *compared* to the other participants in the crime." We agree with F.L. on both points.

¶23   We addressed the interpretation of the Act's second retention factor in *State v. Lara*, 2003 UT App 318, 79 P.3d 951.[6] In *Lara*, we held that the juvenile court "incorrectly interpreted this retention condition to preclude a finding of lesser culpability in circumstances where the juvenile acted as a co-participant with a violent and aggressive person." *Id.* ¶ 27. We faulted the juvenile court for focusing on the codefendants' actions "[r]ather than focusing on Lara's role in the incident," *id.*, concluding that this "was an erroneous application of the statute," *id.* ¶ 28. We held, "The statute requires a focus on the juvenile's behavior and a comparison with the behavior of the other perpetrators." *Id.* "[T]he relevant inquiry is whether the juvenile is less blameworthy than the codefendants because he was not the initiator or driving force behind the crime, did not use a weapon or threaten the victim, or otherwise played a less active role in the crime." *Id.* ¶ 29.

¶24   Here, as in *Lara*, the juvenile court impermissibly focused on F.L.'s commission of the crimes rather than comparing F.L.'s admittedly criminal actions to those of his codefendants. In the first robbery, unlike his codefendants, F.L. did not even enter the store.[7] In the second and third robberies, F.L. entered the stores

---

6. *State v. Lara* applied a pre-2013 version of the Act, under which the defendant was required to establish "'a lesser degree of culpability'" than his codefendants to have his case retained in the juvenile court. *See* 2003 UT App 318, ¶ 25, 79 P.3d 951 (quoting Utah Code Ann. § 78-3a-602(3)(b)(ii) (LexisNexis 2002)).

7. This remains true even if, as the State suggests, F.L. drove the group away from the scene of the robbery.

and took money from the registers—once while visibly carrying a facsimile gun. But unlike his codefendants, it appears that F.L. never pointed a gun at an employee or verbally threatened anyone. The juvenile court erred when it focused on whether F.L. engaged in culpable conduct without evaluating F.L.'s role as compared to that of his codefendants.

## B.   Violence, Aggression, and Premeditation

¶25   The Act's third retention factor concerns "the extent to which the minor's role in the offense was committed in a violent, aggressive, or premeditated manner." Utah Code Ann. § 78A-6-702(3)(c)(iii) (LexisNexis Supp. 2013). The juvenile court found,

> The minor's role was committed in a violent, aggressive or premeditated manner, specifically:
>
> a. [F.L.'s] role in all three robberies was committed in a premeditated manner in that he did aid, assist, or encourage the codefendants in obtaining money from the [three businesses] through the use of gun facsimiles.
>
> b. [F.L.'s] role in the [second] robbery was committed in a violent, aggressive *and* premeditated manner in that the employee observed him with a weapon in the restaurant and [F.L.] removed money from the cash register while a codefendant pointed a gun at the employee. The fact that [F.L.] may not have pointed the weapon at the employee does not minimize the violent and aggressive role he played; [F.L.'s] possession of a gun was clear to the employee who had a gun pointed at her by a codefendant. The division between [F.L.] and the codefendant of their different roles—one will hold the employee at bay with a gun while the other takes money from the register—is evidence of premeditation.
>
> c. Even if the court accepts the defense argument that [F.L.'s] role was not committed in a

> violent or aggressive manner because he did not have a weapon, [F.L.'s] role in the [third] robbery . . . was committed in a premeditated manner in that the division between [F.L.] and the codefendants of their different roles—two held the employee at bay with a gun while [F.L.] took money from the register—is evidence of premeditation. Moreover, [F.L.] did aid, assist and encourage the codefendant in obtaining the money through the use of gun facsimiles.

F.L. argues that his conduct during the three robberies was not violent or aggressive and that his mental deficits prevented him from premeditating about the offenses.

¶26 We reject F.L.'s argument that his mental deficiencies precluded a finding of premeditation. The juvenile court was aware of F.L.'s limited mental abilities, yet it found as a factual matter that F.L. had participated in the three robberies in a premeditated manner. The degree of premeditation necessary to satisfy the Act does not require any particularly high degree of intellect or sophistication and, as the juvenile court properly found, can be inferred from the circumstances of the crimes committed. *See In re W.H.V.*, 2007 UT App 239, ¶ 10, 164 P.3d 1279 ("Defendant's action in this case was more than a mere reaction to an unanticipated event. Defendant entered the store with the other codefendants; conferred with the codefendants in the store after the store clerk blocked the front door; and grabbed cases of beer and ran out of the store immediately after a codefendant hit the store clerk. Given this evidence, there is a reasonable inference that Defendant was part of the violent plan."). Thus, at least as to the second and third robberies,[8] the

---

8. The evidence of F.L.'s premeditation as to the first robbery is less clear, but F.L. does not argue that the evidence supporting the juvenile court's finding is insufficient.

juvenile court properly applied the statute in finding that F.L.'s role in the crimes was premeditated, notwithstanding F.L.'s limited mental capacity.

¶27 But we agree with F.L. that the juvenile court improperly applied the Act with respect to the violence and aggressiveness of his role in the second, and possibly the third, robbery. The juvenile court expressly found that F.L. acted violently and aggressively in the second robbery, and the court did not rule out such a finding regarding the third robbery. In a general sense, of course, all three of these aggravated robberies were crimes of violence, and F.L.'s active participation in the second two could be deemed violent and aggressive. But, as with the evaluation of a minor's degree of culpability under the Act's second factor, the question of violence and aggression "only arises in the context of violent crimes, pursuant to the [Act]." *State v. Lara*, 2003 UT App 318, ¶ 28, 79 P.3d 951. If mere participation in a crime of violence established that a minor's role in the crime was violent and aggressive, "no juvenile could ever meet the [third] retention factor[] because violent crimes will always be in issue." *Id.*

¶28 We decided *Lara* under a prior version of the statute that required the juvenile court to determine whether the juvenile had proved that "the minor's role in the offense was *not* committed in a violent, aggressive, or premeditated manner." *Id.* ¶ 25 (emphasis added) (citation and internal quotation marks omitted). The version of the Act at issue here requires the juvenile court to examine the "*extent to which* the minor's role in the offense was committed in a violent, aggressive, or premeditated manner," Utah Code Ann. § 78A-6-702(3)(c)(iii) (emphasis added), in the larger context of determining whether it would be contrary to the best interests of the public and the juvenile to be adjudicated in juvenile court. By using the language "extent to which," the Legislature appears to have changed the inquiry from a binary question to one that requires the juvenile court to place the minor's actions along a spectrum.

By examining the extent to which the minor acted violently and aggressively, the juvenile court can better assess how the juvenile's violence and aggression—or relative lack thereof—impacts the public and private interests in conducting the trial in district court.

¶29 Here, the juvenile court did not examine F.L.'s role in the three robberies through the lens the Act requires. The juvenile court did not examine the "extent to which" F.L.'s actions in each robbery were themselves violent or aggressive in the context of a retention analysis under the Act.

C.    History of Delinquency

¶30 The Act's fourth retention factor instructs the juvenile court to consider "the number and nature of the minor's prior adjudications in the juvenile court." Utah Code Ann. § 78A-6-702(3)(c)(iv) (LexisNexis Supp. 2013). The juvenile court found,

> From 2011 until June 2012, the number and nature of [F.L.'s] prior adjudications in the juvenile court were minimal. In 2011, [F.L.] was adjudicated for theft of money from his aunt/guardian, an incident of tobacco possession, and a charge for shoplifting candy. In 2012, [F.L.] assaulted his aunt/guardian. The paucity of adjudications in the juvenile system is overshadowed by the escalation in the nature of [F.L.'s] criminal behavior. In a little over two years, [F.L.] graduated from a possession of tobacco charge and shoplifting candy to assaulting his aunt to the current allegations of three counts of aggravated robbery.

F.L. argues that the juvenile court erred when it included the current charges in its evaluation of the fourth factor. We agree.

¶31 The plain language of the fourth retention factor directs the juvenile court to consider only "prior adjudications." Utah

Code Ann. § 78A-6-702(3)(c)(iv). Here, F.L. had prior adjudications, and consideration of those adjudications is required under the statutory language. However, the juvenile court departed from the plain statutory language when it also considered F.L.'s current charges—which are neither "prior" nor "adjudications"—in its evaluation of the fourth factor.

### III. The Best Interests of F.L. and the Public

¶32　The juvenile court concluded that F.L. had not met his burden of demonstrating that binding him over to the district court would be contrary to the best interests of both himself and the public. However, as we have stated above, the juvenile court misinterpreted and misapplied two of the Act's retention factors and partially misapplied a third. The juvenile court's misinterpretation and misapplication of the retention factors prejudiced F.L. because a more favorable result was reasonably likely had the juvenile court applied those factors properly. *See State v. Alzaga*, 2015 UT App 133, ¶ 22, 352 P.3d 107 ("An error is prejudicial if 'absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined.'" (quoting *State v. Dunn*, 850 P.2d 1201, 1208–09 (Utah 1993))); *State v. Sheehan*, 2012 UT App 62, ¶ 15, 273 P.3d 417 ("Our review of the district court's exercise of its discretion include[s] review to ensure that no mistakes of law affected a lower court's use of its discretion." (alteration in original) (citation and internal quotation marks omitted)). We therefore vacate the juvenile court's bindover order and remand this matter for a new retention hearing.[9]

---

9. The parties have not briefed the issue of what version of the Act should apply on remand, and we offer no opinion on that question.

CONCLUSION

¶33    F.L.'s bindover to the district court resulted from the juvenile court's misinterpretation and misapplication of multiple statutory retention factors. We vacate the juvenile court's bindover ruling and remand this matter for further proceedings consistent with this opinion.

_____